No. 23-_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA
SECURITY BREACH LITIGATION

## PETITION OF DEFENDANT MARRIOTT INTERNATIONAL, INC.
## FOR PERMISSION TO APPEAL UNDER RULE 23(F)

*From the Order Granting Class Certification, Entered November 29, 2023,
by the United States District Court for the District of Maryland,
Civil Action No. 19-md-2879*

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
(216) 621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 861-1530

Lindsay C. Harrison
Matthew S. Hellman
Elizabeth B. Deutsch
Mary E. Marshall
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
mhellman@jenner.com

*Counsel for Defendant-Appellant Marriott International, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to <u>Federal Rule of Appellate Procedure 26</u>.1(a), Defendant-Petitioner Marriott International, Inc. certifies that Marriott International, Inc. (NASDAQ: MAR) is a publicly owned company and that no public corporation or entity owns 10% or more of Marriott International, Inc.'s stock.

## STATEMENT OF RELATED CASES

This petition arises from recertification of the classes vacated by this Court in *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023). That decision addressed two consolidated cases: *Maldini v. Marriott Int'l, Inc.* (No. 22-1745) and *Maldini v. Accenture LLP* (No. 22-1744).

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................. i

STATEMENT OF RELATED CASES ............................................................ ii

TABLE OF AUTHORITIES.................................................................... iv

PRELIMINARY STATEMENT ....................................................................1

QUESTIONS PRESENTED ..........................................................................3

BACKGROUND ..........................................................................................4

    A.   Judge Grimm Certifies Sprawling Classes By Deferring Consideration Of The Class-Action Waiver. ...................................................................................4

    B.   This Court Vacates Class Certification. .........................8

    C.   Judge Bailey Recertifies The Identical Classes. ...........8

RELIEF REQUESTED..................................................................................10

REASONS FOR GRANTING THE PETITION ...........................................10

I.   Participation In An MDL Does Not Relinquish Contract Rights. .................................................................................11

II.   Rule 23 Does Not Bar Standalone Class-Action Waivers....................18

III.   Class Membership Cannot Be Ascertained Without Millions of Mini-Trials. ............................................................21

IV.   Plaintiffs' Damages Model Does Not Satisfy Rule 23............................24

V.   The District Court Misused Rule 23(c)(4)...................................26

CONCLUSION ...........................................................................................26

# TABLE OF AUTHORITIES

### CASES

*200 East 87th St. Associates v. MTS, Inc.*, 793 F. Supp. 1237
(S.D.N.Y. 1992), *aff'd*, 978 F.2d 706 (2d Cir. 1992) ................................. 13-14

*In re Aluminum Warehousing Antitrust Litigation*, 336 F.R.D.
5 (S.D.N.Y. 2020) ....................................................................................24

*American Express Co. v. Italian Colors Restaurant*, 570 U.S.
228 (2013) ........................................................................................18, 19

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) ...............................24

*In re Checking Account Overdraft Litigation*, 672 F.3d 1224
(11th Cir. 2012) ........................................................................................12

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .........................................2, 24, 26

*Convergys Corp. v. National Labor Relations Board*, 866 F.3d
635 (5th Cir. 2017) ....................................................................................20

*Crews v. TitleMax of Delaware, Inc.*, 2023 WL 2652242 (M.D. Pa.
Mar. 27, 2023) ..........................................................................................18

*DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F.Supp.3d 1342
(S.D. Fla. 2017) ........................................................................................20

*Dimery v. Convergys Corp.*, 2018 WL 1471892 (D.S.C. Mar. 26,
2018) ..........................................................................................................18

*Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ...........................3

*EQT Productions Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ...........10, 22, 23

*Faggiano v. CVS Pharmacy, Inc.*, 283 F.Supp.3d 33 (E.D.N.Y.
2017) ..........................................................................................................15

*Francis v. Allstate Insurance Co.*, 709 F.3d 362 (4th Cir. 2013) ...................17

*Gilbert Frank Corp. v. Federal Insurance Co.*, 520 N.E.2d 512 (N.Y. 1988) ...........................................................................13

*Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824 (N.Y. 1988) ...............................................................................21

*GMS Industrial Supply, Inc. v. G & S Supply, LLC*, 441 F.Supp.3d 221 (E.D. Va. 2020) ............................................ 15-16

*In re H & R Block Refund Anticipation Loan Litigation*, 59 F.Supp.3d 903 (N.D. Ill. 2014) ..........................................12

*In re Jamster Marketing Litigation*, 2008 WL 4858506 (S.D. Cal. Nov. 10, 2008), *amended*, 2009 WL 250089 (S.D. Cal. Feb. 2, 2009) ...............................................................................12

*Jeong v. Nexo Capital Inc.*, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ...............................................................................20

*Korea Week, Inc. v. Got Capital, LLC*, 2016 WL 3049490 (E.D. Pa. May 27, 2016) .......................................................18

*In re Korean Air Lines Co., Ltd.*, 642 F.3d 685 (9th Cir. 2011) ....................13

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) .................22

*Lindsay v. Carnival Corp.*, 2021 WL 2682566 (W.D. Wash. June 30, 2021) ...............................................................................18

*Lombardi v. DirecTV, Inc.*, 549 F. App'x 617 (9th Cir. 2013) ....................12

*Looper v. Cook Inc.*, 20 F.4th 387 (7th Cir. 2021) .............................................16

*In re Marriott International, Inc., Customer Data Security Breach Litigation*, 363 F.Supp.3d 1372 (J.P.M.L. 2019) ..............................4

*Marvel Entertainment Group, Inc. v. Young Astronaut Council*, 1989 WL 129504 (S.D.N.Y. Oct. 27, 1989) ......................................21

*Mazurkiewicz v. Clayton Homes, Inc.*, 971 F.Supp.2d 682 (S.D. Tex. 2013) ...............................................................................20

*Mey v. DIRECTV, LLC*, 971 F.3d 284 (4th Cir. 2020) .................................21

*Palmer v. Convergys Corp.*, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) ................................................................................................20

*In re Park West Galleries, Inc., Marketing & Sales Practices Litigation*, 655 F.Supp.2d 1378 (J.P.M.L. 2009) ...........................16

*Pfizer, Inc. v. Lord*, 447 F.2d 122 (2d Cir. 1971) ...............................16

*In re Rail Freight Surcharge Antitrust Litigation*, 725 F.3d 244 (D.C. Cir. 2013) .........................................................................26

*In re SFBC International, Inc., Securities & Derivative Litigation*, 435 F.Supp.2d 1355 (J.P.M.L. 2006) .........................16

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) ..................................................................19

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .........................23

*U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247 (S.D.N.Y. June 25, 2015) .......................................................................20

OTHER AUTHORITIES

Sungjin Cho et. al., *Optimal Dynamic Hotel Pricing* (2018) .......................25

Fed. R. Civ. P. 23(f), advisory committee note to the 1998 amendment ......10

## PRELIMINARY STATEMENT

This Court's review is urgently needed once again to address one of the largest class certification orders ever issued in a data-security case. This Court previously vacated class certification because the district court failed to address the parties' class-action waiver before certifying. On remand, Judge Bailey "respectfully disagree[d]" with key aspects of the panel's ruling and recertified identical classes consisting entirely of individuals who had expressly agreed not to pursue class relief. App11. The recertification order rests on two unprecedented holdings. First, the court held that Marriott relinquished its class-waiver defense simply by participating in multidistrict litigation ("MDL"), even though Marriott timely and repeatedly invoked the waiver defense. Second, the court held that Rule 23 prohibits class-action waivers unaccompanied by arbitration provisions. Those determinations are plainly wrong on the law and massively consequential.

Courts regularly enforce class-action waivers both in multidistrict litigation specifically and under the Federal Rules generally. The district court did not cite, let alone distinguish, any of that precedent. Instead, the district court rewrote the history of this case—a history for which the newly assigned Judge Bailey was not present. Marriott agreed to the MDL, which

encompassed dozens of suits involving dozens of agreements, years before plaintiffs invoked the particular contract containing the class-action waiver to define their class claims. The district court's decision threatens the entire enterprise of multidistrict litigation: No defendant in any case would agree to an MDL if doing so meant sacrificing contract defenses—especially under yet-to-be-invoked contracts.

Even setting aside waiver, the recertification order repeats the prior order's mistakes. Among them, certification again rests on a novel "overpayment" theory: Plaintiffs supposedly would have paid less for their hotel rooms had they known about the data-security incident. But millions of would-be class members lack standing under that theory because they were fully reimbursed for their stays. Those uninjured members cannot be identified without transaction-by-transaction proof at trial for many millions of reservations, which precludes certification under this Court's ascertainability precedents.

Nor did plaintiffs meet Rule 23's requirement to prove their damages model actually "measure[s]" overpayment classwide. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Plaintiffs' overpayment model assumes that Marriott's hotel prices always rise and fall in sync with competitors' prices.

2

But plaintiffs' expert never tested this improbable assumption. When Marriott's expert did, she disproved it. Without that discredited assumption, plaintiffs acknowledge their damages model cannot determine which plaintiffs would have paid less for which stays or by how much. Rule 23 and *Comcast* require more.

If this Court does not grant 23(f) review, it may never be able to correct these errors. It is "well known" that certification "can unfairly plac[e] pressure on the defendant to settle even unmeritorious claims." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (internal quotation marks omitted). That is even more true when the certified classes are of unprecedented size. This Court should grant Rule 23(f) review and vacate the recertification order.

## QUESTIONS PRESENTED

1.      Whether a party waives its contractual class-action waiver, venue, and choice-of-law provisions by participating in multidistrict litigation.

2.      Whether Federal Rule of Civil Procedure 23 prohibits class-action waivers unaccompanied by arbitration agreements.

3

3.      Whether a class may be certified where ascertaining standing and class membership requires millions of mini-trials.

4.      Whether a class may be certified where the classwide damages theory rests on a premise that was proven incorrect.

5.      Whether Rule 24(c)(4) can be used to certify issue classes containing millions of individuals who lack standing.

## BACKGROUND

### A.      Judge Grimm Certifies Sprawling Classes By Deferring Consideration Of The Class-Action Waiver.

In September 2016, Marriott acquired Starwood. Dkt. 1014 at 2. Unbeknownst to Marriott, an unauthorized third party had accessed Starwood's reservation database. *Id.* Over 80 potentially related actions were filed in courts across the country. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F.Supp.3d 1372, 1373 (J.P.M.L. 2019). The Judicial Panel on Multidistrict Litigation determined that pretrial proceedings should occur via an MDL sited in the District of Maryland. *Id.* at 1374. Plaintiffs filed a consolidated complaint bringing 96 claims under the laws of all 50 states. Dkt. 537. Litigation proceeded on ten "bellwether" claims. Dkt. 279. Pursuant to the district court's direction to agree to a

bellwether process, the parties expressly reserved choice-of-law arguments in selecting bellwether claims. Dkt. 368.

Marriott moved to dismiss. In its motion, Marriott reaffirmed the parties' agreement to reserve choice-of-law arguments. Dkt. 451 at 2 n.1. Marriott also noted that "Plaintiffs' generic pleading style makes it difficult to sort out what terms and conditions apply to their dealings with Starwood or Marriott, which could include arbitration provisions, class-action waivers, choice-of-law provisions, and limitations on liability." *Id.* at 24 n.15.

The district court denied dismissal largely based on plaintiffs' identity theft allegations. Dkt. 540 at 70-71. Marriott then answered and raised plaintiffs' waiver of class relief as an affirmative defense. Dkt. 604 at 97.

During discovery, Marriott asked plaintiffs what contracts they were relying on for their class claims. *See* Dkt. 1006, Tr. 55:10-56:23 (discussing Marriott's Interrogatory 15). Plaintiffs kept their options open, naming 31 contracts potentially at issue. *See id.* Some contained class-action waivers; others did not. And some contained inconsistent choice-of-law and venue provisions. *See, e.g.*, Dkt. 1138, Ex. E § 8.14, Ex. F § 15 (Marriott Rewards and Website Terms, containing class-action waivers and Maryland choice-of-law and venue provisions).

Plaintiffs, in turn, asked Marriott to explain why their class claims were barred by a class-action waiver. Marriott responded by pointing to the Starwood Preferred Guest Program Terms & Conditions ("SPG Terms"), among other contracts. *See* Marriott's Response to Interrogatory 14.

Discovery failed to substantiate plaintiffs' allegations of classwide identity theft. Dkt. 1019-1 at 3-5. Plaintiffs nevertheless moved to certify sprawling classes encompassing every consumer who provided information to Starwood during the relevant period. But in so doing, plaintiffs had to change their theory of the case. Plaintiffs now rested their standing and classwide damages on an "overpayment" theory: They would have paid less for their hotel rooms had they known about the data-security incident. Dkt. 1014 at 32. And, for the first time in this litigation, plaintiffs identified the SPG Terms as the sole basis for defining their class contract claims. Dkt. 1022-1 at 6-7.

Marriott opposed certification on various grounds, including the class-action waiver in the SPG Terms. All bellwether plaintiffs had enrolled in the SPG Program, the late-breaking centerpiece of plaintiffs' class contract claims. That meant all bellwether plaintiffs had agreed to resolve disputes

"individually without any class action" and could not bring class claims. Dkt. 1019-1 at 36-39.

In addition, Marriott argued Rule 23's requirements were unmet for other reasons. Many plaintiffs were uninjured because they had been reimbursed for their stays (by, *e.g.*, employers), and there was no practical way to determine who had been reimbursed. *Id.* at 30, 48-49. Also, plaintiffs offered a classwide damages model which assumed that all hotel prices always rise and fall together. In reality, however, room rates at different hotels vary based on a host of factors. That meant plaintiffs had not advanced a workable model, as Rule 23 and *Comcast* require.

The district court (Grimm, J.) nonetheless certified damages classes covering Maryland (breach of contract, consumer fraud), New York (same), and California (consumer fraud). Dkt. 1015. Because the SPG class-action waiver applied only to SPG members and thus raised typicality problems, the court *sua sponte* redefined the non-contract classes to include *only* SPG members, as the contract classes did. Dkt. 1014 at 23-25. The court deferred addressing the effect of the class-action waiver on class certification. *Id.* at 25 n.26. It also certified Rule 23(c)(4) negligence classes limited to duty and

7

breach. Dkt. 1015. The certified classes encompass approximately 20 million individuals.

### B. This Court Vacates Class Certification.

This Court granted Rule 23(f) review and unanimously vacated the class certification order. App25. The panel "agree[d] with Marriott on [the] threshold and critical point: The district court erred when it declined to consider, before certifying class actions against Marriott, the import of a purported class-action waiver signed by every putative class member" as part of the SPG Terms. App30. This Court remanded for the district court to determine whether the class-action waiver applied and whether Marriott had preserved it. App32. The opinion noted that Marriott had "raised its class-waiver defense in its answer to the plaintiffs' complaint, and then again at class certification." App32. As such, the Court stated, "at least as a general rule, it is not obvious that more would be required." App32.

### C. Judge Bailey Recertifies The Identical Classes.

On remand, the case was reassigned to Judge Bailey. Dkt. 1134. He requested briefing on "the effect of the class waiver," Dkt. 1135, and certain questions concerning the SPG Terms' "Choice of Law and Venue" provision—the section of the contract containing the class-action waiver, Dkt.

1148. Without a hearing, Judge Bailey then recertified the identical classes. App20.

> The district court began this way:

> In its decision, the Fourth Circuit indicated that by citing the Choice of Law and Venue provision in its answer and only raising it in opposition to class certification, Marriott adequately preserved its individual claims provision. This court respectfully disagrees.

App11. The court went on to hold that Marriott repudiated its contractual class-action waiver by agreeing to resolve claims via the MDL bellwether process, which the court found inconsistent with both the class-action waiver and the choice-of-law and venue provisions in the SPG Terms. App9-11.

The court then held the class-action waiver separately unenforceable under Rule 23 and "federal law" because such waivers, unaccompanied by arbitration provisions, "purport[] to control the court's management of the litigation." App9, App14-15, App17-20.

After Judge Bailey found the class-action waiver unenforceable, he reinstated the vacated classes without any modification or further analysis. App20.[1]

---

[1] The evening before this petition was due, plaintiffs filed a request in the district court to brief the certification of "additional" classes. *See* Dkt. 1156. Though plaintiffs wrote that they "may" at some point seek "modification"

## RELIEF REQUESTED

Marriott requests that the Court grant this petition and vacate the recertification order.

## REASONS FOR GRANTING THE PETITION

Rule 23(f) review may be granted based on "any consideration that the court of appeals finds persuasive." Fed. R. Civ. P. 23(f), advisory committee note to the 1998 amendment. This Court looks to five factors, including: (1) "whether the certification ruling is likely dispositive"; (2) "whether the district court's certification decision contains a substantial weakness"; (3) "whether the appeal will permit the resolution of an unsettled legal question of general importance"; (4) "the nature and status of the litigation"; and (5) "the likelihood that future events will make appellate review more or less appropriate." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).

---

of the existing classes, plaintiffs pointedly did not say that they were seeking the vacatur of the recertified classes, nor did they disclaim classes consisting in whole or in part of SPG members who agreed to a class-action waiver. *Id.* Plaintiffs' transparent attempt to insulate the district court's order from review only underscores the need for relief. The class-action waiver is enforceable and dispositive, and there is no effective way to resolve that issue without this Court's review.

Review is appropriate here because the district court manifestly erred on five recurring issues of law that are likely to be dispositive of one of the largest data-incident class actions in history.

## I.   Participation In An MDL Does Not Relinquish Contract Rights.

The district court held that Marriott relinquished its right to enforce the parties' class-action waiver by agreeing to participate in the MDL. App10-11. That ruling was not based on whether, when, or how often Marriott asserted the class-action waiver in the MDL proceeding: Marriott followed the "consensus" practice by raising the waiver at class certification. App31-32. Nor was the ruling based on the court's "on the scene" knowledge of the case's "litigation dynamics." App32-33. Judge Bailey had no such knowledge; he was assigned this case after this Court's remand. Dkt. 1134.

Instead, the court held that Marriott could *never* invoke its class-waiver defense once it agreed to an MDL. App10-11. That holding is unprecedented. No court has ever held that litigants give up their contract rights and defenses merely by acquiescing to pretrial proceedings in an MDL. The district court's ruling defies both law and logic. Marriott did not, by dint of this MDL, disavow its class-waiver defense or any other contract rights, whether venue or choice of law.

A.    To begin, the district court's ruling conflicts with an unbroken line of authority enforcing class-action waivers in MDLs. *See*, *e.g.*, *Lombardi v. DirecTV, Inc.*, 549 F. App'x 617, 619-20 (9th Cir. 2013); *In re Checking Acct. Overdraft Litig.*, 672 F.3d 1224, 1226, 1230 (11th Cir. 2012); *In re H & R Block Refund Anticipation Loan Litig.*, 59 F.Supp.3d 903, 906, 910 (N.D. Ill. 2014); *In re Jamster Mktg. Litig.*, 2008 WL 4858506, at *1, *8 (S.D. Cal. Nov. 10, 2008), *amended*, 2009 WL 250089 (S.D. Cal. Feb. 2, 2009). The district court did not acknowledge, much less distinguish, this wall of precedent. Nor did the district court cite any contrary precedent, as none exists. No other court has held that participation in an MDL repudiates an agreement to litigate individually rather than as a class.

The district court also misapprehended both the text of the class-action waiver and the nature of an MDL. The district court said that simply agreeing to an MDL disavowed the provision because an MDL is the "antithesis" of a pledge to resolve disputes "individually without any class action." App9-10. Not so. The parties did not agree to resolve their disputes "individually without *any MDL*"; they agreed to resolve them "individually without *any class action*." That is precisely what Marriott is seeking in this case.

Nor is an MDL antithetical to "individually" litigating a case. App9. Parties in an MDL do not act in a representative capacity (as they do in class actions). In an MDL, the constituent cases "remain fundamentally separate actions," temporarily brought together for pretrial proceedings then remanded back to their courts of origin for trial. *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011). An MDL thus treats the underlying claims—on the merits—individually.

The district court not only misunderstood the nature of MDLs in general—it also misunderstood the history of this one in particular. When Marriott agreed to the MDL, plaintiffs had not yet invoked the SPG Terms to define their contract classes, nor had Judge Grimm blue-penciled the non-contract classes to limit class membership to SPG members. Instead, Marriott faced dozens of plaintiffs asserting nearly 100 claims arising under 31 different contracts, most of which did not contain a class-action waiver.

Waiver requires "a clear manifestation of intent by [the] defendant to relinquish" the contractual right. *Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988); *see 200 E. 87th St. Assocs. v. MTS, Inc.*, 793

F.Supp. 1237, 1251 (S.D.N.Y. 1992).[2] Marriott hardly could have clearly

manifested an intent to relinquish a right *before* plaintiffs put it at issue.

Even then, Marriott affirmatively raised its class-waiver defense not

only when opposing class certification, but also in its motion to dismiss, in its

Answer, and during discovery, including in response to plaintiffs' own

interrogatory asking Marriott to identify which contract(s) contained the

class-action waiver invoked in Marriott's Answer. Plaintiffs thus knew full

well that if they chose to define their classes in reference to the SPG Terms,

Marriott would defend against certification with the class-action waiver. On

this record, the district court's suggestion that Marriott's assertion of the

class-action waiver came as an unfair surprise could not be further from

reality. *Compare* App12-13, *with supra* at 5-6; App32.

Marriott did not intentionally and clearly relinquish a right it

affirmatively and timely invoked; nor could it have intentionally and clearly

---

[2] Judge Bailey used the terms "waiver" and "forfeiture"—two distinct concepts with distinct legal tests—without making clear which he was analyzing. App10-13. This Court in the prior appeal suggested that Marriott had not forfeited its class-action waiver argument because it had raised the defense at the proper stages of litigation (in its Answer and at class certification). *See* App32. Marriott therefore construes Judge Bailey to have been analyzing the doctrine of waiver, which concerns intentional acts of relinquishment rather than timing.

relinquished a right by agreeing to an MDL—something no court has ever before held. Appellate review is imperative to correct this gravely erroneous decision.

B.    The district court further held that mere participation in an MDL waived the SPG Terms' venue and choice-of-law clauses. This apparently also meant Marriott waived the class-action waiver because all three clauses are in the same provision of the SPG Terms. App9-12. Both this conclusion and its premise are fundamentally flawed.

Even if Marriott *had* relinquished other provisions of the SPG Terms, that would not matter. The SPG Terms contain a severability clause: "If any part of the[] SPG Program Terms is held to be unlawful or unenforceable, that part will be deemed deleted … and the remaining provisions will remain in force." Dkt. 1022-34 at 21. The SPG Terms also contain a no-waiver clause: "[F]ailure to insist upon strict compliance … will not be deemed a waiver of any rights." *Id.* These commonplace provisions allow the parties to enforce each contract right as a standalone commitment. *See Faggiano v. CVS Pharmacy, Inc.*, 283 F.Supp.3d 33, 35, 37-38 & n.4 (E.D.N.Y. 2017). If another term is found invalid or waived, that does not touch the class-action waiver. *See GMS Indus. Supply, Inc. v. G & S Supply, LLC*, 441 F.Supp.3d 221, 228

15

(E.D. Va. 2020) ("[T]he clauses are divisible because they each impose unique requirements …. Their placement in the same paragraph does not alter that conclusion."). The district court failed even to acknowledge these provisions, much less enforce them.

Regardless, agreeing to an MDL does not waive venue or choice of law. That has to be the rule because here, as is typical of MDLs, there are multiple contracts at issue with competing venue and choice-of-law clauses. *See supra* at 5. At the outset, when plaintiffs had not yet clarified which contracts they were relying on, the question of which clause(s) should govern was not ripe. Agreeing to an MDL did not and could not decide those issues. An MDL is merely "an artificial forum created for purposes of convenience and efficiency." *Looper v. Cook Inc.*, 20 F.4th 387, 392 (7th Cir. 2021) (quotation marks omitted). Venue questions in the constituent cases—including applicable venue clauses—are resolved *after* pretrial proceedings in the MDL conclude.[3]

---

[3] *See, e.g., In re Park West Galleries, Inc., Mktg. & Sales Pracs. Litig.*, 655 F.Supp.2d 1378, 1379 (J.P.M.L. 2009); *In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F.Supp.2d 1355, 1356 (J.P.M.L. 2006); *Pfizer, Inc. v. Lord*, 447 F.2d 122, 124-25 (2d Cir. 1971).

As to choice of law, the district court believed that Marriott acquiesced to non-New York claims (in contravention of the SPG choice-of-law clause) by participating in the bellwether process. App11. But that conclusion disregards the facts. The parties expressly agreed during bellwether selection that "neither party was waiving any arguments it may have regarding choice of law and that each party is reserving its rights as to the same." Dkt. 368; *see also* Dkt. 451 at 2 n.1 (Marriott reserved choice-of-law arguments in motion to dismiss). That reservation is consistent with the common practice of addressing choice of law at summary judgment. *E.g.*, *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 364, 369 (4th Cir. 2013). And Marriott's reservation is certainly not the intentional relinquishment of a known right.

The district court's contrary decision threatens far-reaching consequences. If allowed to stand, it will undermine the very purpose of multidistrict litigation. No rational defendant would ever agree to an MDL if doing so meant repudiating or even risking their contract rights and defenses—much less ones in contracts not yet at issue. This Court should intervene to make clear that a defendant does not lose properly preserved defenses by acquiescing to MDL procedures.

## II. Rule 23 Does Not Bar Standalone Class-Action Waivers.

The district court made a second sweeping and incorrect ruling about class-action waivers: that <u>Federal Rules of Civil Procedure 23</u> and 42 "leave[] no room" for "private agreements among litigants" to a standalone "waiver of consolidated or class-wide adjudication." App17, App19 (quoting *Martrano v. Quizno's Franchise Co., LLC*, 2009 WL 1704469, at \*20-21 (W.D. Pa. June 15, 2009)).

No circuit court has ever so held. The overwhelming weight of authority says the opposite and approves class-action waivers unaccompanied by arbitration agreements. *See, e.g., Lindsay v. Carnival Corp.*, 2021 WL 2682566, at \*3-4 (W.D. Wash. June 30, 2021); *Korea Wk., Inc. v. Got Cap., LLC*, 2016 WL 3049490, at \*7-11 (E.D. Pa. May 27, 2016); *Crews v. TitleMax of Del., Inc.*, 2023 WL 2652242, at \*3-4 (M.D. Pa. Ma<u>r. 27, 2023)</u>; *Dimery v. Convergys Corp.*, 2018 WL 1471892, at \*6 (D.S.C. Ma<u>r. 26, 2018)</u>.

The district court contended that its authority over "judicial administration" meant it could unilaterally annul the parties' contractual agreement not to pursue classwide relief. But the Supreme Court has made clear that Rule 23 does not establish a "nonwaivable" "entitlement to class proceedings." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

Thus, where parties have contracted to waive class actions, a court may not "erase that expectation" to "vindicate federal policies." *Id.* Construing Rule 23 otherwise would be "an 'abridg[ment]' … of a 'substantive right' forbidden to the Rules" under the Rules Enabling Act. *Id.*

Class-action waivers are also perfectly consistent with the plain text of Rule 23. A plaintiff who has agreed not to pursue class relief simply cannot satisfy the requirements for certification, including: (1) that the plaintiff "may sue … as representative parties on behalf of all members"; (2) that the plaintiff's claims are typical of the class; and (3) that a class action is the "superior" and "fair" method of resolving the claims. That is why, as this Court recognized, "[c]ourts consistently resolve the import of class waivers at the certification stage—before they certify a class." App31.

The district court rested its contrary view on a lone unpublished 2009 magistrate judge opinion from outside this Circuit, predating *Italian Colors*. App16-19 (citing *Martrano*, 2009 WL 1704469). The court also mistakenly invoked *Shady Grove Orthopedic Associates*, *P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). There, in a 4-1-4 split, the Supreme Court held that a New York statute prohibiting class actions for statutory damages should not be applied by a federal court sitting in diversity in light of Rule 23. The Court

weighed whether New York and federal rules "address different issues" or conflict; a plurality stated the Rules Enabling Act should govern. *Id.* at 398-99. The Supreme Court did not consider—much less question—the legality of private contracts containing class-action waivers.

The fact that the SPG Terms do not *also* require the parties to arbitrate their disputes changes nothing. App14-15. Indeed, it "makes little sense that an arbitration agreement could take the more drastic step of entirely waiving a federal court forum, including the right to proceed collectively, but a[nother] … contract could not waive the right to proceed collectively in court while preserving the right to bring suit on an individual claim." *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F.Supp.2d 682, 692 (S.D. Tex. 2013). Consistent with that logic, federal courts routinely enforce class-action waivers independent of arbitration provisions, including under New York law. *See, e.g., supra* at 18; *U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *3-4 (S.D.N.Y. June 25, 2015); *Convergys Corp. v. Nat'l Lab. Rels. Bd.*, 866 F.3d 635, 639 (5th Cir. 2017); *Jeong v. Nexo Cap. Inc.*, 2022 WL 3590329, at *14-15 (N.D. Cal. Aug. 22, 2022); *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F.Supp.3d 1342, 1347-49 (S.D. Fla. 2017); *Palmer v. Convergys Corp.*, 2012 WL 425256, at *2-3 (M.D. Ga. Feb. 9, 2012).

The district court's breathtaking holding that the parties' class-action waiver is unenforceable under federal law calls out for review and reversal. This rule would vitiate the settled expectations of contracting parties, contrary to governing law. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 295 (4th Cir. 2020) ("As with any contract, it is not our place to disturb the parties' bargain or relieve a party of the obligations to which it agreed.").

Finally, as part of its enforceability analysis, the district court suggested that the class-action waiver may not be enforceable because it appears "on the last page" of the SPG Terms. App9, App20. There is no ignore-the-last-page canon of contract construction.[4] To the extent the district court suggested otherwise, 23(f) review is warranted.

## III. Class Membership Cannot Be Ascertained Without Millions of Mini-Trials.

The recertified classes again fail Rule 23's "threshold requirement that the members of a proposed class be 'readily identifiable'"—i.e., ascertainable.

---

[4] The district court characterized the SPG Terms as "adhesive." App20. If the court was suggesting the waiver is unconscionable, that is wrong. Plaintiffs forfeited that argument. *See* Dkt. 1138 at 11-12. And New York law sets a "high standard of proof," requiring evidence of procedural *and* substantive unconscionability. *Marvel Ent. Grp., Inc. v. Young Astronaut Council*, 1989 WL 129504, at *4 (S.D.N.Y. Oct. 27, 1989); *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). Plaintiffs showed neither. *See* Dkt. 1138 at 12-17.

*EQT*, 764 F.3d at 358. Discovery revealed that the named plaintiffs were reimbursed for the vast majority—nearly 90%—of their stays overall, and approximately 30% of the named plaintiffs were reimbursed for *every* stay. *See* Dkt. 885, Exs. 40-54. To avoid classes comprising "large numbers" of persons who were reimbursed, and thus had no "overpayment" injury, the district court redefined classes to include only "persons who bore the economic burden" of their stays. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 658 (4th Cir. 2019); Dkt. 1014 at 9-11.[5]

The court was right to recognize that classes must consist only of those persons who were not reimbursed. But it was wrong that it could fix the problem by defining the classes to include only injured plaintiffs. There is no way to determine which would-be class members were not reimbursed after the fact "without extensive and individualized fact-finding or 'mini-trials.'" *EQT*, 764 F.3d at 358. And that means Rule 23's threshold ascertainability requirement cannot be satisfied.

---

[5] Because Judge Bailey "reinstate[d] the classes as certified by Judge Grimm" without providing any additional analysis, App20, references hereinafter to the district court's reasoning refer to Judge Grimm's vacated certification order, Dkt. 1014.

Ignoring the unworkability of the undertaking, the district court posited that 20 million class members could simply supply "bank and credit card statements." Dkt. 1014 at 16. Even that would not prove a negative: *non*-reimbursement. In *EQT*, this Court vacated certification where class membership likewise required proof of a negative—that individuals "never received [certain] royalties." 764 F.3d at 355. Ascertaining membership would require "complicated and individualized" review of records, which might or might not resolve class membership, so no class could be certified. *Id.* at 359-60. So, too, here.

The district court was also wrong to suggest that individual injury questions could be handled by a claims administrator after trial. Dkt. 1014 at 17. Article III forbids courts from holding trials first and worrying about standing later. Every class member's standing "must be supported adequately by the evidence adduced *at trial*," not after. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). This aspect of the recertification order requires reversal.

## IV.  Plaintiffs' Damages Model Does Not Satisfy Rule 23.

The recertified classes also fail Rule 23 because, even apart from reimbursement issues, plaintiffs have no means of calculating classwide overpayment damages.

Before certifying, "courts must conduct a 'rigorous analysis' to determine whether" plaintiffs' damages model can support classwide calculation of damages, *Comcast*, 569 U.S. at 35—including "examin[ing] whether any statistical assumptions made" in plaintiffs' damages model are "reasonable," *Brown v. Nucor Corp.*, 785 F.3d 895, 904 (4th Cir. 2015). "[T]he reliability of [plaintiffs' damages] model[] may not be deferred or deflected to a trial on the merits .... [and] instead must be shown, at this [certification] stage, to be suitably rigorous." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 49 (S.D.N.Y. 2020) (citing *Comcast*, 569 U.S. at 35). Plaintiffs' damages model cannot determine classwide which plaintiffs overpaid, let alone by how much. Plaintiffs' expert never tested the model's foundational assumption, and Marriott's expert disproved it.

Plaintiffs' damages model purports to measure "overpayment"—the difference between what a class member actually paid for a stay versus what she theoretically would have paid had she known about the data incident.

Dkt. 1014 at 32-33. Plaintiffs' expert, Dr. Prince, initially proposed an individualized analysis for every single stay to compare Marriott's prices to competitors' prices in the same region on the same date. But that proved unworkable, as Dr. Prince conceded. Dkt. 885 at 20-21. So Dr. Prince changed his approach, suddenly claiming that he could determine damages classwide by extrapolating the delta between Marriott's and competitors' rates across all prices and all times from a single datapoint.

Dr. Prince's new approach depended on an untested assumption: Hotel prices always move in sync. Dkt. 905-4 ¶ 43. For every stay at every hotel during the class period, Dr. Prince theorized that Marriott's prices rose and fell in sync with its competitors 100% of the time. Dr. Prince "didn't do a formal check" of whether his assumption of "co-movement" was correct. *See* Dkt. 961 at 4. The "totality" of his support was a lone academic article, which is not even about co-movement. *Compare* Dkt. 905-4 ¶ 43, *with* Sungjin Cho et. al., *Optimal Dynamic Hotel Pricing* 16 (2018) (relevant article examining "seven [unnamed] luxury hotels operating in a tightly defined local area" and concluding that co-movement is not an optimal pricing strategy).

By contrast, Marriott's expert tested "co-movement" and disproved it. Dkt. 985 ¶ 19. Using the data from the six markets Dr. Prince studied,

Marriott's expert examined the relative prices of ten hotels across the markets. *Id.* ¶ 20. That data revealed that hotels' relative price ranking changed frequently over time. *Id.* That is, rather than moving up and down at a steady rate relative to each other, the prices of different hotels moved in unconnected, unpredictable, and often opposite ways.

Because plaintiffs failed to "affirmatively demonstrate" that their damages model can measure classwide damages, the recertification order must be vacated. *Comcast*, 569 U.S. at 33. "No damages model, no predominance, no class certification." *In re Rail Freight Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013).

## V.     The District Court Misused Rule 23(c)(4).

Finally, the district court erred by certifying "issue only" negligence classes. Accenture will address issue classes, and Marriott joins Accenture's arguments in full.

## CONCLUSION

This Court should grant the petition and vacate the recertification order.

Dated: December 13, 2023            Respectfully submitted,

Daniel R. Warren                    /s/ Matthew S. Hellman
Lisa M. Ghannoum                    Lindsay C. Harrison
Dante A. Marinucci                  Matthew S. Hellman
Kyle T. Cutts                       Elizabeth B. Deutsch
BAKER & HOSTETLER LLP               Mary E. Marshall
127 Public Square                   JENNER & BLOCK LLP
Suite 200                           1099 New York Avenue, NW
Cleveland, OH 44114                 Suite 900
(216) 621-0200                      Washington, DC 20001
                                    (202) 639-6000
Gilbert S. Keleltas                 mhellman@jenner.com
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 861-1530


*Counsel for Defendant-Appellant Marriott International, Inc.*

27

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2023, I electronically filed the foregoing petition with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. I further certify that on December 13, 2023, I caused a copy of this document to be delivered by email upon the following:

Amy E. Keller
DICELLO LEVITT GUTZLER LLC
Ten North Dearborn Street
6th Floor
Chicago, IL 60602
akeller@dicellolevitt.com

James J. Pizzirusso
HAUSFELD LLP
888 15th Street, NW
Suite 300
Washington, DC 20006
jpizzirusso@hausfeld.com

Megan Jones
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
mjones@hausfeld.com

MaryBeth V. Gibson
THE FINLEY FIRM, P.C.
3535 Piedmont Road
Bldg. 14
Suite 230
Atlanta, GA 30305
mgibson@thefinleyfirm.com

Ariana J. Tadler
TADLER LAW LLP
One Penn Plaza
36th Floor
New York, NY 10119
atadler@tadlerlaw.com

Jason Lichtman
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street
8th Floor
New York, NY 10013
jlichtman@lchb.com

Andrew N. Friedman
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Avenue, NW
Suite 500
Washington, DC 20005
afriedman@cohenmilstein.com

Norman E. Siegel
STUEVE SIEGEL
HANSON LLP
460 Nichols Road
Suite 200
Kansas City, MO 64112
siegel@stuevesiegel.com

Timothy Maloney
Veronica Nannis
JOSEPH GREENWALK & LAAKE,
P.A.
6404 Ivy Lane
Suite 400
Greenbelt, MD 20770
tmaloney@jgllaw.com
vnannis@gjllaw.com

Daniel Robinson
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, CA 92660
drobinson@robinsonfirm.com

Gary F. Lynch
CARLSON LYNCH LLP
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
glynch@carlsonlynch.com

James Ulwick
KRAMON & GRAHAM PA
1 South Street
Suite 2600
Baltimore, MD 21202
julwick@kg-law.com

Craig S. Primis, P.C.
Erin N. Murphy
Devin S. Anderson
Emily M. Lon
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
cprimis@kirkland.com

Dated: December 13, 2023                              /s/ *Matthew S. Hellman*

                                                   Matthew S. Hellman

                                                   JENNER & BLOCK LLP

                                                   1099 New York Avenue, NW

                                                   Suite 900

                                                   Washington, DC 20001

                                                   (202) 639-6000

                                                   mhellman@jenner.com

                                                   *Counsel for Defendant-Appellant*

                                                   *Marriott International, Inc.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This petition complies with the type-volume limitation of Fed. R. App. P. 5(c) and 32(c)(2) because this petition contains 5,174 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2.      This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in 14-point Century Expanded LT Std font.

Dated: December 13, 2023          /s/ Matthew S. Hellman
                                  Matthew S. Hellman
                                  JENNER & BLOCK LLP
                                  1099 New York Avenue, NW
                                  Suite 900
                                  Washington, DC 20001
                                  (202) 639-6000
                                  mhellman@jenner.com

                                  *Counsel for Defendant-Appellant*
                                  *Marriott International, Inc.*

# APPENDIX

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

IN RE:MARRIOTT INTERNATIONAL
CUSTOMER DATA SECURITY BREACH
LITIGATION

MDL No. 19-md-2879

**MEMORANDUM ORDER AND OPINION**

Pending before this Court is Plaintiffs' Motion for Class Certification [Doc. 858], which has generated rounds and rounds of briefing.  For the reasons hereinafter stated, the Motion will be granted.

The facts of this case are well set out in the opinion of the United States Court of Appeals for the Fourth Circuit in *In re Marriott International, Inc.*, 78 F.4th 677 (4th Cir. 2023):

In November 2018, Marriott International, Inc., disclosed that it had been subject to a massive data breach: From July 2014 to September 2018, hackers had access to the guest reservation database of a hotel chain, Starwood Hotels & Resorts Worldwide, that Marriott had purchased mid-breach in September 2016.  Through the Starwood database, the hackers were able to view customers' personal information, including names, mailing addresses, birth dates, email addresses, phone numbers, and, in some cases, passport and payment card information.  The compromised information was associated with both regular guests and those who were

1

**App. 1**

members of the Starwood Preferred Guest Program. In total, the breach affected roughly 133.7 million guest records within the United States.

Consumer plaintiffs across the country began filing lawsuits against Marriott. The suits claimed, in collective effect, that Marriott failed to take reasonable steps to protect its customers' personal information against the foreseeable risk of a cyberattack, giving rise to tort liability. They also alleged that Marriott had breached contractual and statutory duties the company owed to its customers. Those actions were ultimately consolidated in multi-district litigation in the District of Maryland, where Marriott is headquartered. The plaintiffs added as a defendant Accenture LLP, a third-party provider of IT services to Starwood and then Marriott during the relevant period.

In their operative complaint, the plaintiffs asserted various state-law contract and statutory consumer-protection claims against Marriott, along with state-law tort claims for negligence against both Marriott and Accenture. Marriott and the plaintiffs then identified ten "bellwether" claims to test the sufficiency of the pleadings; each was keyed to the law of a particular state, with the named plaintiffs from the selected state serving as the bellwether plaintiffs. The plaintiffs and Accenture followed a similar process to identify test jurisdictions and named plaintiffs for the state-law negligence claims against that defendant. Marriott and Accenture then moved to dismiss the representative plaintiffs' claims.

2

**App. 2**

The district court denied the defendants' motions in relevant part, allowing the plaintiffs' claims to proceed.  *See **In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig. (Marriott I)***, 440 F.Supp.3d 447 (D. Md. 2020); **In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig. (Marriott II)***, 2020 WL 6290670 (D. Md. Oct. 27, 2020).  Most important here, the district court held that the named plaintiffs had adequately alleged "injury in fact" for purposes of Article III standing, and in so doing, it identified the theories of harm that would go on to guide the class certification litigation. **Marriott I**, 440 F. Supp. 3d at 456–66; **Marriott II**, 2020 WL 620670, at *4–5 (incorporating reasoning of **Marriott I**).  Everyone agreed that plaintiffs who had experienced actual "fraudulent misuse of their personal information" had suffered a cognizable injury. **Marriott I**, 440 F.Supp.3d at 456 n.4, 460 n.6. But the district court also found, as relevant here, that the remaining plaintiffs had advanced three other forms of injury sufficient to establish standing: (1) that they had spent time and money mitigating a non-speculative threat of identity theft (the "mitigation" theory); (2) that the cyberattack had deprived them of the inherent market value of their personal identifying information (the "loss of market value" theory); and (3) that they had paid more for their hotel rooms than they would have had they known of Marriott's allegedly lax data-security practices (the "overpayment" theory). Id. at 460–66.

3

B.

The plaintiffs moved to certify various classes, and in the decision now before us, the district court granted that motion in part. *See **In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig. (Marriott III)***, 341 F.R.D. 128 (D. Md. 2022). On the plaintiffs' contract and consumer-protection claims against Marriott, the court certified three state-specific damages classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure. *Id*. at 172–73. And on the plaintiffs' negligence claims against Marriott and Accenture, the court certified four state-specific "issue" classes under Rule 23(c)(4), limited to the elements of duty and breach, with individualized proceedings on injury, causation, and the amount of damages to follow. *Id*. at 173. Our ruling today turns primarily on the import of a class-action waiver signed by members of the damages classes against Marriott. But that issue is intertwined with others in this complex proceeding, and the defendants' objections are wide-ranging, so we lay out much of the district court's comprehensive opinion below.

1.

The district court began by returning to the question of the class representatives' standing. *Id*. at 140–43. The court relied mostly on its prior analysis from the motion to dismiss stage, reasoning that the same evidentiary burden applied through class certification and until summary judgment, at which point the defendants could raise further standing

4

**App. 4**

challenges. *Id*. at 141. The district court did, however, make one adjustment to the scope of the damages classes against Marriott in response to standing concerns. Those classes, the court explained, relied in critical part on an alleged "overpayment" injury: The class members paid more for their hotel rooms than they were worth, given Marriott's data-security deficiencies. But as defined by the plaintiffs, Marriott argued, the classes also included customers, like those traveling for work, who were reimbursed for their stays and thus did not themselves incur the hypothesized economic injury. *Id*. at 142. The district court agreed, and thus limited the classes proceeding on the overpayment theory of injury – the contract and consumer-protection classes against Marriott – to "persons who bore the economic burden for hotel room[s]" and were not reimbursed for their stays. *Id*. at 142–43.

That raised a second concern for Marriott: that the classes, so defined, were insufficiently "ascertainable" because there was no administratively feasible way of determining who was and was not a class member. *See* **EQT Prod. Co. v. Adair**, 764 F.3d 347, 358 (4th Cir. 2014) (discussing Rule 23's "implicit threshold requirement" that members of a proposed class be "readily identifiable" (internal quotation marks omitted)). Here, the district court disagreed, finding no reason to think – at least at present – that identifying class members who had paid their own way would call for any "exceptionally complicated administrative review." **Marriott III**, 341 F.R.D. at 144. But the court cautioned that it would continue to monitor

5

**App. 5**

this process, redefining the classes or even decertifying them altogether if identifying members proved too unwieldy. *Id*. at 146.

2.

The court turned then to the issue implicating the class-action waivers at the heart of this appeal: Rule 23(a)'s "typicality" requirement, under which a class representative's claims and defenses must be typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3); *Marriott III*, 341 F.R.D. at 149.  The problem here, as Marriott saw it, was that the class representatives, all members of the Starwood Preferred Guest Program ("SPG"), had a contractual relationship with Marriott that differed critically from that of other class members.  As SPG members, every class representative had signed a "Terms & Conditions" contract with a provision purporting to waive his or her right to pursue class litigation.  *See* J.A. 727 ("Any disputes arising out of or related to the SPG Program or the[ ] SPG Program Terms will be handled individually without any class action ....").  But as the plaintiffs had defined them, the consumer-protection and negligence classes against Marriott included non-SPG members, who had not signed such waivers. And that, the district court concluded, did indeed "raise[ ] serious typicality concerns," because Marriott had indicated that it would rely on the waiver to argue that SPG members – like the class representatives, but unlike many class members – could not pursue class litigation at all. *Marriott III*, 341 F.R.D. at 149.

6

**App. 6**

To address that concern, the district court redefined all classes against Marriott to include only SPG members, bringing the class representatives into alignment with class membership. *Id*. The result, of course, was that now every proposed class member litigating against Marriott would be someone who had purportedly given up the right to engage in just such class litigation. But the district court did not further consider the import of the class waiver on its certification decision. Instead, in a footnote, it first observed that the plaintiffs had raised a "strong argument" that Marriott had waived its right to enforce the class-action waiver; though it was included as a "one-line, boilerplate affirmative defense" in Marriott's answer, Marriott had not otherwise pressed the issue as "part of the bellwether negotiation process" or in any separate motion. *Id*. at 149 n.26. And in any event, the court concluded, it could address the class-action waiver, along with other affirmative defenses, after discovery and at the merits stage of the litigation. *Id*.

After addressing other threshold Rule 23(a) requirements not at issue on appeal, the court proceeded to certify several state-specific Rule 23(b)(3) damages classes against Marriott on the plaintiffs' contract and consumer-protection claims. Here, the focus was on Rule 23(b)(3)'s predominance requirement, *see* Fed. R. Civ. P. 23(b)(3), which in this context meant that damages must be "capable of measurement on a classwide basis." *Marriott III*, 341 F.R.D. at 161 (quoting *Comcast Corp. v.*

7

**App. 7**

*Behrend*, 569 U.S. 27, 34 (2013)).  Though damages need not be calculated on a classwide basis, that is, the plaintiffs had to demonstrate that there was a "common, classwide method for determining individual damages." *Id*. (internal quotation marks omitted).  And as the court explained, it had approved just such a common method for calculating the plaintiffs' alleged overpayment injuries in a companion Daubert opinion issued the same day. *Id*. at 161–62 & n.48 (citing *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig. (Marriott IV)*, 602 F. Supp. 3d 767 (D. Md. 2022))."

*In re Marriott International, Inc.*, 78 F.4th at 680–683.

After the district court entered its certification order, Marriott and Accenture timely petitioned the Fourth Circuit for permission to appeal under Rule 23(f) of the Federal Rules of Civil Procedure.  The Fourth Circuit granted the petitions.

On appeal, the Fourth Circuit determined that the district court erred in not addressing the issue of whether the plaintiffs, by agreeing to the SPG Terms and Conditions, agreed to bar the certification of a class action.  Accordingly, the Fourth Circuit vacated the class certification and remanded this case for consideration of the issue.  The Court further found that, in the absence of a valid class certification against Marriott, the class certification against Accenture cannot stand.  Accordingly, the class certification with regard to Accenture was vacated and remanded as well.

Since the major issue on remand is the effect of the "class action waiver," it would appear prudent to first examine the provision.  On the last page of the Pre-August SPG

**App. 8**

Program Terms, there is a "class waiver" provision found in the choice of law and the venue section, as follows:

13.21 Choice of Law and Venue. Any disputes arising out of or related to the SPG Program or these SPG Program Terms will be handled individually without any class action, and will be governed by, construed and enforced in accordance with the laws of the State of New York, United States, without regard to its conflicts of law rules. The exclusive jurisdiction for any claim or action arising out of or relating to these SPG Program Terms or the SPG Program may be filed only in the state or federal courts located in the State of New York, United States.

This Court makes the following observations with regard to the Choice of Law and Venue provision:

1. The entire provision contains only two sentences;

2. The heading of the provision makes no reference to individual handling of claims;

3. The provision is buried on the last page of the Terms;

4. While it has been described as a class action waiver, the provision is broader than that, mandating the handling of all claims on an individual basis;

5. The provision requires that New York law apply to any dispute;

6. The provision limits the jurisdiction to handle any claims to the state and federal courts of New York;

7. Rather than referencing the parties, this provision purports to control the court's management of the litigation, i.e. will be handled individually.

9

**App. 9**

The plaintiff's contend that Marriott waived or forfeited the provision by its inaction and action.  A court may find that a party has waived a contractual provision when the party takes actions that are inconsistent with the provision.  Waiver of an argument precludes review, while mere forfeiture of an argument permits plain error review.  "Forfeiture 'is the failure to make the timely assertion of a right,' while 'waiver is the "intentional relinquishment or abandonment of a known right."' *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))."  *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 498–99 (7th Cir. 2018).

"There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." *Hill v. Xerox Bus. Servs.*, LLC, 59 F.4th 457, 471 (9th Cir. 2023).

"Outside the arbitration context, a federal court assessing waiver does not generally ask about prejudice.   Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.' *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted).  To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022).

In this case, this Court finds that Marriott waived the Choice of Law and Venue provision:

1.    Marriott requested that all of the cases be consolidated into an MDL action. An MDL is the antithesis of handling each claim on an individual basis;

**App. 10**

2.      When Marriott sought the MDL, it asked for "transfer and consolidation to eliminate duplicative discovery, avoid conflicting rulings, reduce litigation costs, and conserve the time and effort of the parties, attorneys, witnesses, and courts";

3.      In seeking the MDL, Marriott added that "separately litigating each of the 59 related actions, plus additional tag-alongs, offer no benefit and will inevitably heighten the duplication, complexity, and burdens of these matters for all stakeholders";

4.      Marriott requested that the MDL be assigned to the District of Maryland, which is wholly inconsistent with the Choice of Law and Venue provision's requirement that any case be filed in New York;

5.      Despite the Choice of Law and Venue provision, Marriott stated that venue was proper in the District of Maryland;

6.      At status conferences in April and May, 2019, the parties jointly suggested a bellwether approach using plaintiffs from several states and claims under those various states' laws.  For several of the states, Marriott nominated multiple representative plaintiffs.  Again, this is wholly inconsistent with handling cases on an individual basis, in New York, applying only New York law.

In the bellwether process, Marriott noted that it was not waiving any arguments it may have regarding choice of law and that each party is recerving its rights as to the same.  However, a reservation of rights is not an assertion of rights.  *Hooper v. Advance America Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009).

In its decision, the Fourth Circuit indicated that by citing the Choice of Law and Venue provision in its answer and only raising it in opposition to class certification, Marriott adequately preserved its individual claims provision.  This Court respectfully disagrees.

11

**App. 11**

The provision prohibits any collective handling of the claims, including by class action. It is not merely a class action waiver.

It appears that Marriott having not fared as well as it had hoped in the bellwether process is now attempting to invoke one half of one third of the Choice of Law and Venue provision. It has clearly waived 5/6 of the provision. It now seeks to enforce the words "class action" completely out of context. Marriott should not be permitted to cherry-pick the rules from a provision, having waived every other term therein. "In this case, the arbitration agreement also included a waiver of the right to bring a class action suit. If GC Services waived any right to arbitrate, the company necessarily waived any right to oppose class certification premised on the agreement. *See A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1065 n.17 (7th Cir. 2018)." *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018). "Individually without class action" is a single phrase - it is a single rule. And it has been waived.

As the Supreme Court noted in *Stern v. Marshall*:

We have recognized "the value of waiver and forfeiture rules" in "complex" cases, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487–488, n. 6 (2008), and this case is no exception. In such cases, as here, the consequences of "a litigant ... 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor," *Puckett v. United States*, 556 U.S. 129, 134 (2009) (some internal quotation marks omitted)—can be particularly severe. If Pierce believed that the Bankruptcy Court lacked the authority to decide his claim for defamation,

**App. 12**

then he should have said so—and said so promptly. *See United States v. Olano*, 507 U.S. 725, 731 (1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited ... by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'" (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944))).  Instead, Pierce repeatedly stated to the Bankruptcy Court that he was happy to litigate there.  We will not consider his claim to the contrary, now that he is sad.

*Stern v. Marshall*, 564 U.S. 462, 481–82 (2011).

This Court also has reservations as to the validity of the Choice of Law and Venue provision, even were it not waived.  In *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), the United States Supreme Court held that a New York statute precluding a class action to recover a penalty such as statutory interest was invalid because it conflicted with Rule 23 of the Federal Rules of Civil Procedure.

The Fourth Circuit, relying on *Shady Grove*, held that a West Virginia state statute requiring a pre-filing expert report for a claim of medical malpractice conflicted with the Federal Rules of Civil Procedure and was invalid in Federal court.  *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021).

In *Johnson v.  West Virginia Univ. Bd. of Govs.*, 2022 WL 908496, at *13 (S.D. W.Va. March 29, 2022) (Johnston, C.J.), the Court held that "[t]he applicability of the *Shady Grove* analysis is not limited to cases involving federal question jurisdiction—which was the case in *Pledger*—rather, cases involving diversity jurisdiction and supplemental

13

**App. 13**

jurisdiction are also within *Shady Grove's* purview. *See* ***Doe #5 v. Raleigh General Hospital, LLC.***, 2021 WL 4496241, at *5 (S.D. W.Va. Sept. 30, 2021) [(Volk, J.)] ('Simply put, the conflict between the pre-suit notice and the Federal Rules of Civil Procedure does not dematerialize in diversity actions. *Pledger* applies just the same.')."  Chief Judge Johnston added that "*Pledger's* holding is categorical: 'state-law certification requirements like West Virginia's [MPLA] are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court.' *Pledger*, 5 F.4th at 514.  It was of no consequence that Pledger's claims were brought pursuant to the FTCA and invoked the court's federal question jurisdiction, as claims brought under the FTCA 'incorporate[ ] state-law rules of "substantive liability," [but] not procedure.' *Id.* at 523 (citing ***FDIC v. Meyer***, 510 U.S. 471, 478 (1994)).  Similarly, here, it is of no consequence that Plaintiff's claims were brought pursuant to the MPLA, thereby invoking this Court's supplemental jurisdiction.  *Pledger's* holding, and the *Shady Grove* analysis set forth therein, are applicable in this case because it is in federal court, notwithstanding this Court's jurisdiction over Plaintiff's claims." *Johnson*, 2022 WL 908496, at *13.

Marriott cites a number of cases which have found class action waivers to be enforceable.  Many of these case dealt with class action waivers in the arbitration context. ***American Express Co. v. Italian Colors Restaurant***, 570 U.S. 228 (2013); ***Viking River Cruises, Inc. v. Moriana***, 596 U.S. __, 142 S.Ct. 1906 (2022); ***In re Titanium Dioxide Antitrust Litigation***, 962 F.Supp.2d 840 (D. Md. 2013); ***County of Orange v. United States District Court***, 784 F.3d 520 (9th Cir. 2015).  Of course, where the parties agree to resolve their case in a non-judicial forum, the Federal Rules have limited applicability.

14

**App. 14**

Marriott has, however, cited to some cases which have upheld class action waivers in a non-arbitral context. In ***Crews v. Titlemax of Delaware, Inc.***, 2023 WL 2652242 (M.D. Pa. March 27, 2023), the District Court upheld a stand alone class waiver, finding that ***Shady Grove*** did not address whether the parties, through contract, can waive their right to bring claims as part of a class.

Similarly, in ***Deluca v. Royal Caribbean Cruises, LTD***, 244 F.Supp.3d 1342 (S.D. Fla. 2017), the District Court upheld the validity of a waiver where the first paragraph of the ticket contract contains bolded language specifically directing passengers to important terms and conditions. The notice states:

**IMPORTANT NOTICE TO GUESTS**

**YOUR CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS. IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND SECTION 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE, AND RETAIN IT FOR FUTURE REFERENCE.**

Paragraph 9(b) contained a class action relief waiver printed in all caps.

This Court finds the above cases to be unpersuasive. In this case the Choice of Law and Venue provision does not state that SPG members will not bring or participate in class actions. Rather, it seeks to limit this Court's own authority by stating that "[a]ny disputes . . . will be handled individually." The parties cannot by agreement dictate that a district court must ignore the provisions of Rule 23 of the Federal Rules of Civil Procedure.

In *Martrano v. Quizno's Franchise Co., L.L.C.*, 2009 WL 1704469 (W.D. Pa. June 15, 2009), Magistrate Judge Lenihan reviewed a defense request that the plaintiffs be barred from participating in a class action or consolidation based upon a contractual bar. The Court analyzed the issue as follows:

> "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005), quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Although classification of a law as 'substantive' or 'procedural' for this purpose is "sometimes a challenging endeavor", *id.*, "[c]oncerning matters covered by the Federal Rules of Civil Procedure, the characterization question is usually unproblematic: It is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law." *Gasperini*, 518 U.S. at 427 n. 7. Thus,

> > When a situation is covered by one of the Federal Rules ... the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

> *Hanna v. Plumer*, 380 U.S. 460, 471 (1965), *quoted in Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 27(1988).

16

**App. 16**

Consolidated and class-wide adjudication are clearly procedural devices governed by specific Federal Rules. *See* Fed.R.Civ.P. 23, 42. Accordingly, the question before the court is whether giving effect to a purported waiver of consolidated or class-wide adjudication would comport with the language and purpose of those Rules. For the reasons explained below, this Court concludes that it would not.

This Court has, after extensive review, located no case authorities addressing the proper role of contractual waivers by the parties in class action or consolidation determinations under Rules 23 or 42. Virtually all of the reported cases on contractual class action waivers involve mandatory arbitration clauses, a circumstance that renders them patently distinguishable from the present case. Simply stated, whether the parties may effectively agree, as a matter of State contract law, to constrain the procedures to be followed in a privately-contracted dispute resolution has little apparent bearing on whether such an agreement also constrains a federal court's application of its own rules, whose authority derives from a federal statute (and ultimately from the Constitution) rather than from a private contract.

The Court does find guidance, however, in cases considering the effect of contractual forum-selection agreements on federal venue. In ***Stewart Organization***, the Supreme Court "rejected the ... contention that the effect ... of a forum selection clause should be a matter purely of contractual interpretation governed by state law", instead requiring the district

17

**App. 17**

court to "determine whether to give the clause effect by transferring the case to ... the contractually specified forum" by applying on the standards laid out in .the federal change of venue statute, 28 U.S.C. § 1404(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). The Court accordingly concluded that [t]he forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration ..., but rather the consideration for which Congress provided in § 1404(a)." *Stewart Organization*, 487 U.S. at 31. Thus, rather than being treated as a binding agreement overriding otherwise applicable venue standards, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum", which is a factor encompassed within the framework of § 1404. *Jumara*, 55 F.3d at 880.54

\*     \*     \*

More particularly, if the prerequisites of Rule 23(a) are satisfied, whether a class action may be maintained turns on whether injunctive or declaratory relief is warranted for the whole class by defendants' conduct on grounds that apply generally to the class, or whether common questions predominate over individual questions and a class action is superior to other methods of adjudication. *See* Fed.R.Civ.P. 23(b)(2),(3). These controlling standards make no mention of whether a class action is preferred by the parties. Likewise, as long as actions involve a common question of law or

18

**App. 18**

fact, Rule 42(a) contemplates issuance of consolidation orders "to avoid unnecessary cost or delay"—a standard that also does not call for consideration of the parties' preferences. Under both Rule 23 and Rule 42, the ultimate governing standard is furtherance of efficient judicial administration, which leaves no room for enforceability of private agreements among litigants to forego the efficiencies potentially afforded by consolidated or class adjudication.

This is not just an academic issue. Defendants' invocation of the Agreement's class action / consolidation waiver could potentially force this and other courts to hold separate trials of dozens, or hundreds, or even thousands of cases involving extensively overlapping issues. Such a result is flatly inconsistent with the governing Rules, which are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.

Because this Court finds that as a matter of federal law the parties' waivers are ineffective to override the court's discretion to certify a class under Rule 23 or consolidate proceedings under Rule 42, it is unnecessary to address Plaintiffs' contention that such waivers are void due to unconscionability under State law.

*Martrano v. Quizno's Franchise Co.*, 2009 WL 1704469, at *20–21 (W.D. Pa. June 15, 2009) (footnotes omitted).

**App. 19**

For the above reasons, this Court finds that Marriott waived any benefit from its Choice of Law and Venue provision. In addition, this Court finds the adhesive provision[1], buried on the last page of the Terms cannot direct this Court to ignore the provisions of Rule 23 of the Federal Rules of Civil Procedure.

This Court also finds that inasmuch as this Court will re-certify the classes with respect to Marriott in this case, the class certification with regard to Accenture will be reinstated again.

Accordingly, this Court will reinstate the classes as certified by Judge Grimm in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022).

This Court notes that on November 27, 2023 [Doc. 1154] Marriott requested oral argument on the Choice of Law and Venue issues. At the time that the undersigned received the Motion, the undersigned was approximately two-thirds of the way through preparing this Order. Accordingly, Marriott's Unopposed Request for a Hearing to Address the Court's September 22, 2023, and November 7, 2023, Orders [**Doc. 1154**] is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

─────────────────

[1] This Court notes that in ***Atlantic Marine Const. Co. v. U.S. District Court***, 571 U.S. 49, 66 (2013), the Court stated "A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place." This was hardly the case herein.

**App. 20**

**DATED**: November 29, 2023.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

**App. 21**

a conclusion that it was "so obvious" that Mitchell created a substantial risk of serious bodily injury when he struck Officer Jones.[5] *See Bolden*, 964 F.3d at 288.

For these reasons, I would vacate the district court's application of the official victim enhancement and remand the case for resentencing to have the district court explain fully its application of both disputed enhancements.



**IN RE: MARRIOTT INTERNATIONAL, INC., Customer Data Security Breach Litigation,**

**Peter Maldini; Paula O'Brien; Robert Guzikowski; Denitrice Marks; Maria Maisto; Irma Lawrence; Michaela Bittner; Kathleen Frakes Hevener; Brent Long; David Viggiano; Eric Fishon; Annemarie Amarena; Roger Cullen, all proceeding individually and on behalf of all others similarly situated, Plaintiffs - Appellees,**

**v.**

**Accenture LLP, Defendant - Appellant.**

**The Chamber of Commerce of the United States of America; The National Retail Federation, Amici Supporting Appellants.**

**The National Association of Consumer Advocates; Public Justice; Electronic Frontier Foundation; Electronic Privacy Information Center, Amici Supporting Appellees.**

**In re: Marriott International, Inc., Customer Data Security Breach Litigation.**

**Peter Maldini; Roger Cullen; Paula O'Brien; Robert Guzikowski; Denitrice Marks; Maria Maisto; Irma Lawrence; Michaela Bittner; Kathleen Frakes Hevener; Annemarie Amarena; Brent Long; David Viggiano; Eric Fishon, All Proceeding Individually and on Behalf of All Others Similarly Situated, Plaintiffs - Appellees,**

**v.**

**Marriott International, Incorporated, Defendant - Appellant.**

**The Chamber of Commerce of the United States of America; The National Retail Federation, Amici Supporting Appellants.**

court found [the defendant] raised his weapon or repositioned it to hold it by the grip.").

**5.** The majority also cites *Alexander* to support its statement that "[a]s little as one punch to the head by an unarmed person may cause a substantial risk of serious bodily injury." Op., at 670. I do not disagree that, in some circumstances, that might be the case. But the majority fails to acknowledge the succeeding sentences in *Alexander*:

We are not holding or even suggesting that every swing of a fist qualifies for the

upward adjustment under [the official victim enhancement]. Applying the Guideline standard to the specific circumstances of a case is the responsibility of the district judge.

712 F.3d at 979. Under the posture of this case, in which the district court failed to provide a sufficient explanation for its reasoning or to identify what particular circumstances created a "substantial risk of serious bodily injury," it is not "so obvious" that the two strikes would have supported the application of the enhancement. *Bolden*, 964 F.3d at 288.

**National Association of Consumer Advocates; Public Justice; Electronic Frontier Foundation; Electronic Privacy Information Center, Amici Supporting Appellees.**

No. 22-1744, No. 22-1745

United States Court of Appeals, Fourth Circuit.

Argued: May 3, 2023

Decided: August 18, 2023

**Background:** Consumers brought consolidated class action claims against hotel chain and data security company for negligence, breach of contract, and consumer protection, arising from data breach in which hackers had access to consumers' personally identifiable information via guest information database. Consumers moved to certify classes and subclasses for monetary damages, liability issues, and injunctive or declaratory relief. The United States District Court for the District of Maryland, Paul W. Grimm, J., 341 F.R.D. 128, partially granted motion to certify classes and subclasses. Defendants' petitions for permission to appeal were granted.

**Holdings:** The Court of Appeals, Harris, Circuit Judge, held that:

(1) certifying classes was improper without first addressing defense of waiver of right to bring class action against chain, and

(2) class action on issues whether company owed duty to customers and breached it was no longer superior.

Vacated and remanded.

**1. Federal Courts** ⟜3585(3)

Court of Appeals reviews a district court's class certification decision for abuse of discretion, cognizant of both the considerable advantages that district court colleagues possess in managing complex litigation and the need to afford them some latitude in bringing that expertise to bear.

**2. Federal Courts** ⟜3565

District court per se abuses its discretion when it makes an error of law or clearly errs in its factual findings.

**3. Federal Civil Procedure** ⟜175

Certifying classes was improper without first addressing defense that class members, hotel guests, had waived right to bring class action against hotel chain to recover for damages caused by hacker's breach of guest reservation database; class-waiver defense was not merits issue as it was a defense to being required to litigate a class action at all, and even if waiver raised a merits question, there was nothing unusual or counter-intuitive about requiring court to consider aspects of merits in connection with class certification. Fed. R. Civ. P. 23.

**4. Federal Civil Procedure** ⟜171

Certification is key moment in class action litigation; it is sharp line of demarcation between individual action seeking to become class action and actual class action. Fed. R. Civ. P. 23.

**5. Federal Civil Procedure** ⟜182.5

Superiority requirement for class action by hotel guests on issues whether data security company owed duty to guests and breached it was not satisfied after Court of Appeals vacated certification order in suit against hotel chain for damages caused by hacker's breach of guest reservation database; district court reasoned that it would already be analyzing intertwined factual circumstances relevant to duty and breach issues since it had certified damages class against chain, but without classes against chain, nothing remained to support district court's superiority finding as to issue classes against company. Fed. R. Civ. P. 23(b)(3), 23(c)(4).

**6. Federal Civil Procedure ⟜161.2**

The superiority of class proceedings simply cannot be taken for granted, even when common questions predominate as to the certified issues; instead, courts must evaluate superiority question of efficiency carefully. Fed. R. Civ. P. 23(b)(3).

———

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, Senior District Judge. (8:19-md-02879-PWG)

ARGUED: Matthew S. Hellman, JEN-NER & BLOCK LLP, Washington, D.C.; Devin S. Anderson, KIRKLAND & EL-LIS, LLP, Washington, D.C., for Appellants. Amy Elisabeth Keller, DICELLO LEVITT GUTZLER LLC, Chicago, Illinois, for Appellees. ON BRIEF: Craig S. Primis, Emily M. Long, Katherine E. Canning, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant Accenture LLP. Daniel R. Warren, Lisa M. Ghannoum, Dante A. Marinucci, Kyle T. Cutts, Cleveland, Ohio, Gilbert S. Keltas, BAKER & HOSTETLER LLP, Washington, D.C.; Lindsay C. Harrison, Zachary C. Schauf, Kevin J. Kennedy, Mary E. Marshall, Raymond B. Simmons, JENNER & BLOCK LLP, Washington, D.C., for Appellant Marriott International, Inc. James J. Pizzirusso, Washington, D.C., Megan Jones, HAUSFELD LLP, San Francisco, California; Andrew N. Friedman, COHEN MILSTEIN SELL-ERS & TOLL PLLC, Washington, D.C.; Norman E. Siegel, Kasey Youngentob, STUEVE SIEGEL HANSON LLP, Kansas City, Missouri; Jason L. Lichtman, Sean A. Petterson, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, New York, New York; MaryBeth V. Gibson, THE FINLEY FIRM, P.C., Atlanta, Georgia; Megan Jones, HAUSFELD LLP, San Francisco, California; Timothy Maloney, Veronica Nannis, JOSEPH GREENWALD & LAAKE, P.A., Green-belt, Maryland; Gary F. Lynch, LYNCH CARPENTER, LLP, Pittsburgh, Pennsylvania; James Ulwick, KRAMON & GRA-HAM PA, Baltimore, Maryland; Daniel Robinson, ROBINSON CALCAGNIE, INC., Newport Beach, California; Ariana J. Tadler, TADLER LAW LLP, New York, New York, for Appellees. Jennifer B. Dickey, Jordan L. Von Bokern, UNIT-ED STATES CHAMBER LITIGATION CENTER, Washington, D.C., for Amicus Chamber of Commerce of the United States of America. Stephanie A. Martz, NATIONAL RETAIL FEDERATION, Washington, D.C., for Amicus National Retail Federation. Ashley C. Parrish, Julianne L. Duran, KING & SPALDING LLP, Washington, D.C., for Amici Chamber of Commerce of the United State of America and National Retail Federation. Ira Rheingold, NATIONAL ASSOCIA-TION OF CONSUMER ADVOCATES, Washington, D.C., for Amicus National Association of Consumer Advocates. Shelby Leighton, PUBLIC JUSTICE, Washington, D.C., for Amicus Public Justice. Hassan A. Zavareei, Glenn E. Chappell, Spencer S. Hughes, Cameron Partovi, Schuyler Standley, TYCKO & ZAVAR-EEI LLP, Washington, D.C., for Amici National Association of Consumer Advocates and Public Justice. Cindy A. Cohn, Adam Schwartz, ELECTRONIC FRON-TIER FOUNDATION, San Francisco, California, for Amicus Electronic Frontier Foundation. Chris Frascella, Megan Iorio, Tom McBrien, ELECTRONIC PRIVACY INFORMATION CENTER (EPIC), Washington, D.C., for Amicus Electronic Privacy Information Center. Jean Sutton Martin, John A. Yanchunis, Kenya J. Reddy, MORGAN & MORGAN COMPLEX LITIGATION GROUP, Tampa, Florida, for Amici Electronic Frontier Foundation and Electronic Privacy Information Center.

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Niemeyer and Judge King joined.

PAMELA HARRIS, Circuit Judge:

In November 2018, Marriott International, Inc., announced that hackers had breached one of its guest reservation databases, giving them access to millions of guest records. Customers across the country began filing lawsuits, which were consolidated into multidistrict litigation in Maryland. The plaintiffs then moved to certify multiple class actions against Marriott and Accenture LLP, an IT service provider that managed the database at issue.

The district court obliged in part. After extensive proceedings, it certified classes for monetary damages on breach of contract and statutory consumer-protection claims against Marriott under Rule 23(b)(3) of the Federal Rules of Civil Procedure. It also certified "issue" classes on negligence claims against Marriott and Accenture under Rule 23(c)(4), limited to a subset of issues bearing on liability.

We granted the defendants' petitions to appeal the district court's certification order and now conclude that the order must be vacated. The district court erred, we find, in certifying damages classes against Marriott without first considering the effect of a class-action waiver signed by all putative class members. And because the existence of damages classes against Marriott was a critical predicate for the district court's decision to certify the negligence issue classes, that error affects the whole of the certification order. Accordingly, we vacate the district court's certification order and remand for further proceedings consistent with this opinion.

## I.

### A.

In November 2018, Marriott International, Inc., disclosed that it had been subject to a massive data breach: From July 2014 to September 2018, hackers had access to the guest reservation database of a hotel chain, Starwood Hotels & Resorts Worldwide, that Marriott had purchased mid-breach in September 2016. Through the Starwood database, the hackers were able to view customers' personal information, including names, mailing addresses, birth dates, email addresses, phone numbers, and, in some cases, passport and payment card information. The compromised information was associated with both regular guests and those who were members of the Starwood Preferred Guest Program. In total, the breach affected roughly 133.7 million guest records within the United States.

Consumer plaintiffs across the country began filing lawsuits against Marriott. The suits claimed, in collective effect, that Marriott failed to take reasonable steps to protect its customers' personal information against the foreseeable risk of a cyberattack, giving rise to tort liability. They also alleged that Marriott had breached contractual and statutory duties the company owed to its customers. Those actions were ultimately consolidated in multi-district litigation in the District of Maryland, where Marriott is headquartered. The plaintiffs added as a defendant Accenture LLP, a third-party provider of IT services to Starwood and then Marriott during the relevant period.

In their operative complaint, the plaintiffs asserted various state-law contract and statutory consumer-protection claims against Marriott, along with state-law tort claims for negligence against both Marriott and Accenture.[1] Marriott and the

---

**1.** The plaintiffs brought claims for both negligence and negligence per se. For the sake of

plaintiffs then identified ten "bellwether" claims to test the sufficiency of the pleadings; each was keyed to the law of a particular state, with the named plaintiffs from the selected state serving as the bellwether plaintiffs. The plaintiffs and Accenture followed a similar process to identify test jurisdictions and named plaintiffs for the state-law negligence claims against that defendant. Marriott and Accenture then moved to dismiss the representative plaintiffs' claims.

The district court denied the defendants' motions in relevant part, allowing the plaintiffs' claims to proceed. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.* (*Marriott I*), 440 F. Supp. 3d 447 (D. Md. 2020); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.* (*Marriott II*), No. 19-md-2879, 2020 WL 6290670 (D. Md. Oct. 27, 2020). Most important here, the district court held that the named plaintiffs had adequately alleged "injury in fact" for purposes of Article III standing, and in so doing, it identified the theories of harm that would go on to guide the class certification litigation. *Marriott I*, 440 F. Supp. 3d at 456–66; *Marriott II*, 2020 WL 620670, at *4–5 (incorporating reasoning of *Marriott I*). Everyone agreed that plaintiffs who had experienced actual "fraudulent misuse of their personal information" had suffered a cognizable injury. *Marriott I*, 440 F. Supp. 3d at 456 n.4, 460 n.6. But the district court also found, as relevant here, that the remaining plaintiffs had advanced three other forms of injury sufficient to establish standing: (1) that they had spent time and money mitigating a non-speculative threat of identity theft (the "mitigation" theory); (2) that the cyberattack had deprived them of the inherent market value of their personal identifying information (the "loss of market value" theory); and (3) that they had paid more for their hotel rooms than

they would have had they known of Marriott's allegedly lax data-security practices (the "overpayment" theory). *Id.* at 460–66.

**B.**

The plaintiffs moved to certify various classes, and in the decision now before us, the district court granted that motion in part. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.* (*Marriott III*), 341 F.R.D. 128 (D. Md. 2022). On the plaintiffs' contract and consumer-protection claims against Marriott, the court certified three state-specific damages classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure. *Id.* at 172–73. And on the plaintiffs' negligence claims against Marriott and Accenture, the court certified four state-specific "issue" classes under Rule 23(c)(4), limited to the elements of duty and breach, with individualized proceedings on injury, causation, and the amount of damages to follow. *Id.* at 173. Our ruling today turns primarily on the import of a class-action waiver signed by members of the damages classes against Marriott. But that issue is intertwined with others in this complex proceeding, and the defendants' objections are wide-ranging, so we lay out much of the district court's comprehensive opinion below.

**1.**

The district court began by returning to the question of the class representatives' standing. *Id.* at 140–43. The court relied mostly on its prior analysis from the motion to dismiss stage, reasoning that the same evidentiary burden applied through class certification and until summary judgment, at which point the defendants could raise further standing challenges. *Id.* at 141. The district court did, however, make one adjustment to the scope of the dam-

---

convenience, we refer to them together here    as negligence claims.

ages classes against Marriott in response to standing concerns. Those classes, the court explained, relied in critical part on an alleged "overpayment" injury: The class members paid more for their hotel rooms than they were worth, given Marriott's data-security deficiencies. But as defined by the plaintiffs, Marriott argued, the classes also included customers, like those traveling for work, who were reimbursed for their stays and thus did not themselves incur the hypothesized economic injury. *Id.* at 142. The district court agreed, and thus limited the classes proceeding on the overpayment theory of injury – the contract and consumer-protection classes against Marriott – to "persons who bore the economic burden for hotel room[s]" and were not reimbursed for their stays. *Id.* at 142–43.

That raised a second concern for Marriott: that the classes, so defined, were insufficiently "ascertainable" because there was no administratively feasible way of determining who was and was not a class member. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (discussing Rule 23's "implicit threshold requirement" that members of a proposed class be "readily identifiable" (internal quotation marks omitted)). Here, the district court disagreed, finding no reason to think – at least at present – that identifying class members who had paid their own way would call for any "exceptionally complicated administrative review." *Marriott III*, 341 F.R.D. at 144. But the court cautioned that it would continue to monitor this process, redefining the classes or even decertifying them altogether if identifying members proved too unwieldy. *Id.* at 146.

### 2.

The court turned then to the issue implicating the class-action waivers at the heart of this appeal: Rule 23(a)'s "typicality" requirement, under which a class representative's claims and defenses must be typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3); *Marriott III*, 341 F.R.D. at 149. The problem here, as Marriott saw it, was that the class representatives, all members of the Starwood Preferred Guest Program ("SPG"), had a contractual relationship with Marriott that differed critically from that of other class members. As SPG members, every class representative had signed a "Terms & Conditions" contract with a provision purporting to waive his or her right to pursue class litigation. *See* J.A. 727 ("Any disputes arising out of or related to the SPG Program or the[ ] SPG Program Terms will be handled individually without any class action . . . ."). But as the plaintiffs had defined them, the consumer-protection and negligence classes against Marriott included *non*-SPG members, who had *not* signed such waivers.[2] And that, the district court concluded, did indeed "raise[ ] serious typicality concerns," because Marriott had indicated that it would rely on the waiver to argue that SPG members – like the class representatives, but unlike many class members – could not pursue class litigation at all. *Marriott III*, 341 F.R.D. at 149.

To address that concern, the district court redefined all classes against Marriott to include only SPG members, bringing the class representatives into alignment with class membership. *Id.* The result, of course, was that now *every* proposed class member litigating against Marriott would be someone who had purportedly given up the right to engage in just such class liti-

---

**2.** The plaintiffs' proposed contract classes, by contrast, already included only SPG members. *Marriott III*, 341 F.R.D. at 149 & n.24.

gation. But the district court did not further consider the import of the class waiver on its certification decision. Instead, in a footnote, it first observed that the plaintiffs had raised a "strong argument" that Marriott had waived its right to enforce the class-action waiver; though it was included as a "one-line, boilerplate affirmative defense" in Marriott's answer, Marriott had not otherwise pressed the issue as "part of the bellwether negotiation process" or in any separate motion. *Id.* at 149 n.26. And in any event, the court concluded, it could address the class-action waiver, along with other affirmative defenses, after discovery and at the merits stage of the litigation. *Id.*

### 3.

After addressing other threshold Rule 23(a) requirements not at issue on appeal, the court proceeded to certify several state-specific Rule 23(b)(3) damages classes against Marriott on the plaintiffs' contract and consumer-protection claims. Here, the focus was on Rule 23(b)(3)'s predominance requirement, *see* Fed. R. Civ. P. 23(b)(3), which in this context meant that damages must be "capable of measurement on a classwide basis." *Marriott III*, 341 F.R.D. at 161 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013)). Though damages need not be *calculated* on a classwide basis, that is, the plaintiffs had to demonstrate that there was a "common, classwide *method* for determining individual damages." *Id.* (internal quotation marks omitted). And as the court explained, it had approved just such a common method for calculating the plaintiffs' alleged overpayment injuries in a companion *Daubert* opinion [3] issued the same day.

*Id.* at 161–62 & n.48 (citing *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.* (*Marriott IV*), 602 F. Supp. 3d 767 (D. Md. 2022)).

The plaintiffs' expert, the court concluded, had developed an admittedly "complex" model that nevertheless allowed each class member to use the same statistical formula to calculate his or her overpayment damages, relying on the same set of variables for each hotel stay. *Id.* at 161–62. Though some individual data would be required as an input, that information would be "objective and administrative in nature," raising no "individualized issues of a substantive nature." *Id.* at 162. And the expert model satisfied the *Comcast* requirement that it measure only those damages attributable to the identified theory of harm, isolating the overpayment theory of harm and attendant damages from the plaintiffs' other theories of injury. *Id.* at 163 (applying the "*Comcast* requirement that a plaintiff's damages case be consistent with its liability case" (cleaned up)). But here again, the court cautioned that its decision was not final: As of yet, the plaintiffs' model had been tested only against the bellwether plaintiffs. *Id.* at 163. If it turned out that individual inquiries threatened to overwhelm the analysis when applied more broadly, the court would adjust or decertify the classes. *Id.*

### 4.

That left the proposed negligence classes against both Marriott and Accenture. The court first denied the plaintiffs' motion for certification of full damages classes under Rule 23(b)(3), concluding that there was no common, classwide basis

---

**3.** In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny, the Supreme Court set forth the standard for admitting expert testimony in federal trials. *See also* Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

for calculating damages caused by the defendants' alleged negligence. *Id.* at 153. Here, the plaintiffs rested on the "loss of market value" theory of injury, arguing that all class members lost the value of their personal information when it was exposed to hackers and presenting an expert model for measuring that market value across all class members. But in its accompanying *Daubert* order, the district court rejected that model, leaving the plaintiffs with no classwide theory of injury or measure of damages. *Id.* at 153–54 & n.32. The court recognized, however, that the plaintiffs were pursuing a different methodology for measuring market value, anchored to Marriott's own valuation of its reward customers' personal data, and denied the plaintiffs' motion without prejudice, allowing for further proceedings on that matter. *Id.* at 154.

The court did, however, certify "issue" negligence classes against Marriott and Accenture under Rule 23(c)(4). *Id.* at 167–71; *see* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."). These classes proceeded under theories of injury – actual fraud losses and the mitigation costs of guarding against such losses – that were concededly individualized. *See id.* at 168; *see also id.* at 169 n.62 (observing that the plaintiffs did not dispute that individualized issues predominated as to whether they had suffered actual injury, "a fourth consistent element . . . required to establish liability"). Moreover, the court concluded, individualized issues predominated on the question of causation, requiring "substantial individualized inquiry" as to whether class members' data may have been exposed through something other than the Starwood breach or whether it was indeed the defendants' alleged negligence that proximately caused their injuries. *Id.* at 169. By contrast, the court found, it was clear (and Marriott did not

seriously dispute) that common issues predominated as to the other elements of the plaintiffs' negligence claims – the existence of a duty owed by the defendants to the plaintiffs and a breach of that duty. *Id.* Accordingly, the court certified issue classes on the duty and breach elements of the plaintiffs' negligence claims alone, to be followed (if the plaintiffs succeeded) by individualized proceedings on the injury and causation elements as well as damages.

The court recognized that certification of issue classes under Rule 23(c)(4) calls for special attention to Rule 23(b)(3)'s superiority requirement, under which a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The efficiency gains of certification, that is, must be evaluated in light of the need for individualized proceedings at the back end. *See Marriott III*, 341 F.R.D. at 170. And here, the court acknowledged, the issue-class litigation it had authorized would leave important elements and issues unresolved, requiring extensive subsequent litigation. Nevertheless, the court concluded, "efficiency gains stemming from certification of the duty and breach issues outweigh this fact," given that the court already had certified damages classes against Marriott. *Id.* Because it would "already be analyzing the intertwined factual circumstances relevant to the duty and breach issues" in connection with the Marriott contract and consumer-protection classes, the court reasoned, "[n]ot certifying the duty and breach issue classes" would "result in totally unnecessary duplication." *Id.*

5.

After the district court entered its certification order, Marriott and Accenture timely petitioned this court for permission

to appeal under Rule 23(f) of the Federal Rules of Civil Procedure. We granted the petitions and this appeal followed.

**II.**

**[1, 2]**　We review a district court's class certification decision for abuse of discretion, *Gregory v. Finova Cap. Corp.*, 442 F.3d 188, 190 (4th Cir. 2006), "cognizant of both the considerable advantages that our district court colleagues possess in managing complex litigation and the need to afford them some latitude in bringing that expertise to bear," *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019). Nevertheless, "[a] district court per se abuses its discretion when it makes an error of law or clearly errs in its factual findings." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006).

In their petitions and on appeal, the defendants challenge multiple aspects of the district court's certification ruling, objecting, *inter alia*, to its finding that membership in the damages classes against Marriott was sufficiently "ascertainable"; to its approval of the plaintiffs' model for classwide calculation of overpayment damages; and, on several different grounds, to its certification of negligence "issue" classes limited to the elements of duty and breach. But we need not resolve all these issues – some of which, as noted above, involve district court rulings expressly left open to further consideration – in this interlocutory posture.[4]

That is because we agree with Marriott on one threshold and critical point: The district court erred when it declined to

consider, *before* certifying class actions against Marriott, the import of a purported class-action waiver signed by every putative class member. And that error, in turn, affected the certification of the negligence issue classes against Accenture, because the certification of the Marriott damages classes was the linchpin of the district court's Rule 23(b)(3) superiority analysis. Accordingly, we vacate the certification order in its entirety and remand for proceedings consistent with this opinion.

**A.**

We begin with Marriott's class-action waiver defense. Marriott maintains that every SPG member agreed to resolve disputes against it only "individually [and] without any class action" when they signed the SPG Terms & Conditions contract. *See* J.A. 727. And because of the district court's Rule 23(a) typicality ruling, the certified classes against Marriott now consist *entirely* of SPG members. *See Marriott III*, 341 F.R.D. at 149. Those putative class members are bound, Marriott contends, by a contractual waiver that applies to all the certified claims, barring the entirety of the class action against it.

**[3]**　The threshold question on appeal is whether the district court erred by certifying classes against Marriott without first addressing this class-action waiver defense. *See Marriott III*, 341 F.R.D. at 149 n.26 (explaining that the court will address the class-waiver defense, along with other affirmative defenses, after certification and at the merits stage of the litigation). Mar-

---

**4.**　The certification order in this complex case incorporates a number of critical and contested rulings, some but not all of which are before us in this Rule 23(f) posture. As outlined above, much of the district court's certification order is premised on its early adoption, at the motion to dismiss stage, of the plaintiffs' various theories of injury and Article III standing, which included the overpay-

ment and loss of market value theories. The order also incorporates two *Daubert* rulings – one in favor of the plaintiffs, one in favor of the defendants – regarding the susceptibility of those theories to classwide proof. We do not reach those issues today, and our narrow decision should not be understood to express any view on aspects of the certification order beyond those directly addressed.

riott argues vigorously that class waivers must be addressed and (if appropriate) enforced at the *certification* stage, not after a class action already has been litigated through to the merits. And, notably, the plaintiffs seem not to disagree – at least, not by much. Apart from a half-sentence referring to a district court's general discretion to manage its docket, the plaintiffs' brief does not join issue on this timing question at all; instead, it jumps straight to the merits of Marriott's defense, arguing that Marriott repudiated or otherwise waived the defense and that the class waiver is in any event unenforceable and largely inapplicable. If there is an argument in favor of deferring consideration of a class waiver until after certification, the plaintiffs have not made it, and it may well be forfeited. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument . . . by failing to develop it – even if its brief takes a passing shot at the issue." (cleaned up)).

Regardless, we agree with Marriott that the time to address a contractual class waiver is before, not after, a class is certified. Although it seems no court has had occasion to expressly hold as much, that is the consensus practice. Courts consistently resolve the import of class waivers at the certification stage – before they certify a class, and usually as the first order of business. *See, e.g., Kaspers v. Comcast Corp.*, 631 F. App'x 779, 784 (11th Cir. 2015) (per curiam) ("[B]ecause we have concluded that the class-action waiver was valid, the district court did not need to consider the requirements for class certification under Rule 23."); *Archer v. Carnival Corp. & PLC*, No. 2:20-CV-04203, 2020 WL 6260003, at *4, *8 (C.D. Cal. Oct. 20, 2020) (finding that because the plaintiffs' motion

for certification was barred by class waiver there was no need to address whether the plaintiffs' claims satisfied the requirements for certification set forth in Rule 23(a) and 23(b)(3)); *Ranzy v. Extra Cash of Tex., Inc.*, No. Civ. A. H-09-3334, 2011 WL 13257274, at *8 (S.D. Tex. Oct. 14, 2011) (concluding that class-action waivers precluded plaintiff from asserting claims on behalf of a class, obviating need to reach the Rule 23 requirements); *Lindsay v. Carnival Corp.*, No. C20-982, 2021 WL 2682566, at *4 (W.D. Wash. June 30, 2021) (denying the plaintiffs' motion for class certification as barred by class waiver without addressing the requirements of Rule 23); *cf. Palacios v. Boehringer Ingelheim Pharms., Inc.*, No. 10-22398-CIV, 2011 WL 6794438, at *2–4 (S.D. Fla. Apr. 19, 2011) (finding that class-action waiver prevented plaintiff from participating in any class action, including collective actions brought pursuant to 29 U.S.C. § 216(b)).[5]

[4] We think this is the only approach consistent with the nature of class actions and the logic of class waivers. Under Rule 23, certification is the key moment in class-action litigation: It is the "sharp line of demarcation" between "an individual action seeking to become a class action and an actual class action." *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1304 (4th Cir. 1978). But by signing a valid and enforceable class waiver, as alleged here, a plaintiff promises not to cross that line – to give up, in exchange for some contractual benefit, the right to proceed by way of an "actual class action." *See Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020) ("A class action waiver is a promise to forgo a procedural right to

---

**5.** The only contrary authority located by the parties is a district court decision declining to resolve a class waiver issue at certification that was subsequently reversed on other

grounds on appeal. *See Earl v. Boeing Co.*, 339 F.R.D. 391 (E.D. Tex. 2021), *rev'd on other grounds*, 53 F.4th 897 (5th Cir. 2022).

pursue class claims."). If that "sharp line" is to be maintained, then a district court simply cannot certify a class at the behest of plaintiffs who have promised to stay on the "individual action" side of it.

Although the district court addressed this issue only parenthetically, it did suggest that it would be appropriate to group Marriott's class-waiver defense with its other affirmative defenses, all to be resolved at the "merits stage" of the class action litigation it was certifying. *Marriott III*, 341 F.R.D. at 149 n.26. We disagree. First, a class-waiver defense is not a "merits" issue in the usual sense. Whether a plaintiff may proceed via a class action does not speak to the underlying merits of his claim; it speaks to the process available in pursuit of that claim. Put differently, a class-waiver defense is not a defense to liability but to being required to litigate a class action at all. If that defense is addressed only after a class action already has been litigated to the merits, then it is effectively lost, *cf. Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (discussing qualified immunity as "immunity from suit"), and the defendant is denied the benefit of its contractual bargain.

And in any event, even if a class-waiver defense is treated as a merits question, that does not mean it should not be resolved at the certification stage. The Supreme Court has emphasized the "rigorous analysis" that must be performed *before* a class is certified under Rule 23 – even where that analysis will "entail some overlap with the merits." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). There is nothing unusual or counter-intuitive, in other words, about requiring courts to consider aspects of the merits in connection with class certification. *See id.* ("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (cleaned up)).

The district court provided no other reason for declining to rule on Marriott's waiver defense before certifying a class against it, and none is apparent to us. We thus conclude, for the reasons given above, that the district court erred by certifying multiple classes against Marriott consisting entirely of plaintiffs who had signed a putative class waiver without first addressing the import of that waiver. Accordingly, we vacate the certification of all classes against Marriott and remand to the district court so that it may undertake this inquiry in the first instance.

In so doing, we decline the plaintiffs' invitation to resolve on appeal an issue never ruled on by the district court: whether, as the plaintiffs argue, Marriott repudiated or waived its class-waiver defense. It is true, as the plaintiffs emphasize, that the district court characterized their "waiver of the waiver" argument as a "strong" one. *Marriott III*, 341 F.R.D. at 149 n.26. But contrary to the plaintiffs' suggestions, the district court did not purport to resolve the issue, instead limiting itself to an aside. *See id.* ("Nevertheless, the Court need not rule on this issue at this time."). Moreover, we have some questions about the court's commentary. As Marriott argues, it raised its class-waiver defense in its answer to the plaintiffs' complaint and then again at class certification, and at least as a general rule, it is not obvious that more would be required. But to the extent the court was concerned with the particulars of Marriott's litigation strategy, *see id.* (discussing "bellwether negotiation process" and motions practice), that is a matter squarely within the purview of the district court, which has by far the better vantage point. *Cf. Stuart v. Huff*, 706 F.3d 345, 349–50 (4th Cir. 2013) (explaining that litigation "dynamics" are best evaluated by district courts based on

their "on the scene" presence (internal quotation marks omitted)). Accordingly, we leave it to the district court on remand to consider all "arguments related to waiver of the waiver provision," *Marriott III*, 341 F.R.D. at 149 n.26, in connection with a new certification determination.

Similarly, we will not take up for the first time on appeal questions related to the validity and scope of the Terms & Conditions class waiver. The plaintiffs raise objections to enforcement of that waiver under both state and federal law, and contend in the alternative that the waiver's scope does not reach their consumer-protection and negligence claims. Marriott, of course, argues to the contrary. But the district court declined to pass on these questions, too. *See id.* (deferring ruling on "the arguments both parties have made as to the applicability" of the contractual waiver provision until after discovery and a ruling on the merits). That leaves us without any development of those issues, and so we follow our ordinary course and leave to the district court "the first opportunity to perform the applicable analysis." *Fusaro v. Cogan*, 930 F.3d 241, 263 (4th Cir. 2019); *id.* at 264 ("[T]his Court is a court of review, not of first view . . . ." (internal quotation marks omitted)).

**B.**

[5] Having vacated the district court's certification order as to the classes against Marriott, we turn now to the negligence issue classes against Accenture.[6] As described above, the district court certified Rule 23(c)(4) issue classes on two and only two elements of the plaintiffs' negligence claims against Accenture – whether Accenture owed a duty of care to the plaintiffs and whether it had breached any such duty. The remaining elements – injury and

causation, or whether a breach of duty established classwide caused injury to a given plaintiff – would be litigated in follow-on individual proceedings, along with damages. *Marriott III*, 341 F.R.D. at 167–71. Accenture objects to these issue classes on multiple grounds, arguing, *inter alia*, that Rule 23(c)(4) does not permit the certification of some but not all elements of a cause of action, and that even if it does, these classes do not satisfy Rule 23(b)(3)'s superiority requirement. As explained below, we agree that the district court's superiority analysis cannot stand, and on that ground, we vacate the certification of the classes against Accenture.

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). In *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003), we held that this rule allows for certification of a class as to a particular cause of action, even where a lawsuit as a whole would not satisfy Rule 23(b)'s predominance requirement. *See* 348 F.3d at 439–45. *But see id.* at 446–48 (Niemeyer, J., concurring in part and dissenting in part). The question here is related but distinct: whether a court may certify certain *elements* of a cause of action as to which common issues predominate (in this case, duty and breach) when individual issues predominate as to other elements (here, injury and causation). It may be, as the district court concluded, that the case law is "coalesc[ing]" around a "broad view of Rule 23(c)(4) in which common questions need predominate over individual ones only for the specific issues that are certified, not for the entire cause of action." *Marriott III*, 341 F.R.D. at 168 (internal quotation marks omitted); *see also Naparala v. Pella Corp.*, No. 2:14-cv-

---

6. Those classes remain before us because Accenture, unlike Marriott, has not argued that it may enforce the class waiver provisions in the putative class members' SPG Terms & Conditions contract.

03465, 2016 WL 3125473, at *13–14 (D.S.C. June 3, 2016) (identifying similar "emerging majority" of decisions in favor of "permissive approach" to issue certification); *Martin v. Behr Dayton Thermal Prods., LLC*, 896 F.3d 405, 411–12 (6th Cir. 2018) (collecting cases). But as the district court explained, our court has yet to rule directly on this issue, and the question is not entirely free from doubt. *See Marriott III*, 341 F.R.D. at 168 n.60; *see also Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800, 2015 WL 127930, at *11 (D.S.C. Jan. 8, 2015) ("[T]he Fourth Circuit has not directly addressed this dispute and the relationship between Rule 23(b)(3) and Rule 23(c)(4) . . . .").[7]

What is clear, however, is that if courts certify classes on individual elements of a cause of action, Rule 23(b)(3)'s superiority requirement takes on special importance. As several district courts in our circuit have cogently explained, this kind of issue class will "almost automatically" meet Rule 23(b)(3)'s predominance requirement; once the issues to be certified are "narrowed down to make them sufficiently 'common,' " it is virtually axiomatic that common issues will predominate. *Naparala*, 2016 WL 3125473, at *14 (internal quotation marks omitted); *see also Parker*, 2015 WL 127930, at *15. That puts the "focus [on] Rule 23(b)(3)'s second requirement, superiority," because the same narrowing process will have cleaved off individualized questions of liability, as well as damages, for separate individual trials, diminishing the efficiency gains of the class proceedings. *Naparala*, 2016 WL 3125473, at *14; *see also Tillman v. Highland Industries, Inc.*, No. 4:19-cv-02563, 2021 WL 4483035, at *19 (D.S.C. Sept. 30, 2021) (explaining

that certification of specific elements of liability, "leaving the remaining pieces of liability and damages to be determined at individual trials," would "render the significance of the class action easily overwhelmed" by the subsequent individual proceedings (cleaned up)). And although class litigation may address the "incentive problem" that arises when individual plaintiffs do not have enough at stake to justify individual litigation, that benefit, too, is diminished by issue certifications "where the remaining individualized issues will also require significant resources." *Romig v. Pella Corp.*, No. 14-cv-00433, 2016 WL 3125472, at *17 (D.S.C. June 3, 2016); *see also Naparala*, 2016 WL 3125473, at *16. For all these reasons, "the superiority component of Rule 23(b)(3) frequently comes into play to defeat issue certification." *Parker*, 2015 WL 127930, at *15.

The district court here recognized as much. *Marriott III*, 341 F.R.D. at 170 (explaining need to "additionally consider whether the efficiency gains of certification outweigh the fact that individualized issues requiring significant time and attention remain for later" (cleaned up)). And it acknowledged that the efficiency of class proceedings would be affected by the fact that "important issues related to causation, affirmative defenses, and damages related to Accenture's conduct [would] not be resolved during issue-class adjudication." *Id.* But that loss of efficiency, the court concluded, would be outweighed by one thing: the efficiency benefits of certifying the issue classes *together* with the damages classes against Marriott. Because it had "certified damages classes against Marriott," the court explained, it would "already be analyzing the intertwined factual

---

**7.** Nor has this court had occasion to address Accenture's additional concern regarding bifurcation of liability elements in this context, in which injury and causation elements have been carved out of class proceedings: that the

result is inconsistent with Article III standing requirements, because there is no assurance at the certification stage that all class members have suffered the necessary injury in fact at the hands of the defendant.

circumstances relevant to the duty and breach issues." *Id.* And given the damages classes against Marriot, *not* certifying issue classes against Accenture "would result in totally unnecessary duplication as Plaintiffs and Defendants litigated the Marriott class action and the presumably numerous individual Accenture-related cases." *Id.*

**[6]** As explained above, however, we have now vacated certification of the Rule 23(b)(3) damages classes against Marriott. And without those classes, nothing remains to support the district court's superiority finding as to the issue classes against Accenture. In the Rule 23(c)(4) issue-class context, as the district court understood and all agree, the superiority of class proceedings simply cannot be taken for granted, even when common questions predominate as to the certified issues. Instead, courts must "evaluate this question of efficiency carefully." *Id.* Because the underpinning of the district court's careful evaluation has been removed, we must vacate the court's certification of the Rule 23(c)(4) issue classes, as well. On remand, the district court may reconsider that determination, taking into account its ultimate disposition of the plaintiffs' motion to certify Rule 23(b)(3) damages classes against Marriott.

### III.

For the foregoing reasons, we vacate the district court's certification order and remand for further proceedings consistent with this opinion.[8]

*VACATED AND REMANDED*



---

8. After briefing was completed, the plaintiffs moved to supplement the record to include two letter orders issued by the district court concerning discovery related to Marriott's

valuation of its customers' personal information. The materials in question have no bearing on our grounds of decision, and so we deny the motion as moot.

---

### IN RE: Weldon W. STEWART, Jr., Movant.

### No. 21-278

United States Court of Appeals, Fourth Circuit.

Argued: January 26, 2023

Decided: August 21, 2023

**Background:** Following state conviction for voluntary manslaughter, the United States District Court for the District of South Carolina, Sol Blatt, Jr., Senior District Judge, 701 F.Supp.2d 785, denied petition for habeas relief. Petitioner appealed. The United States Court of Appeals for the Fourth Circuit, 412 Fed.Appx. 633, dismissed the appeal. Petitioner filed motion for authorization to file successive habeas petition.

**Holdings:** The Court of Appeals, Quattlebaum, Circuit Judge, held that petitioner's claim that he had dissociative amnesia and now remembered that victim died by suicide did not demonstrate that no reasonable factfinder would find him guilty of voluntary manslaughter.

Motion denied.

Gregory, Circuit Judge, filed opinion concurring in part and concurring in judgment.

---

**1. Habeas Corpus ⟜894.1**

Generally, a state prisoner is entitled to only one federal habeas challenge. 28 U.S.C.A. § 2254.

**2. Habeas Corpus ⟜894.1, 899**

For any successive federal habeas application, the Antiterrorism and Effective