No. 23-299

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

IN RE: MARRIOTT INTERNATIONAL, INC.,
CUSTOMER DATA SECURITY BREACH LITIGATION

MARRIOTT INTERNATIONAL, INC.,

*Petitioner*,

v.

PETER MALDINI; ROGER CULLEN; PAULA O'BRIEN; ROBERT GUZIKOWSKI; DENITRICE MARKS; MARIA MAISTO; IRMA LAWRENCE; MICHAELA BITTNER; KATHLEEN FRAKES HEVENER; ANNEMARIE AMARENA; BRENT LONG; DAVID VIGGIANO; ERIC FISHON, all proceeding individually and on behalf of all others similarly situated,

*Respondents.*

On Petition for Permission to Appeal from the United States District Court for the District of Maryland, No. 8:19-md-02879, Hon. John P. Bailey

## BRIEF FOR THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF THE PETITION

Jennifer B. Dickey
Jordan L. Von Bokern
U.S. CHAMBER
LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

*Counsel for the Chamber of Commerce of the United States of America*

Ashley C. Parrish
Zoe M. Beiner
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
aparrish@kslaw.com

Anne M. Voigts
KING & SPALDING LLP
601 South California Avenue, Ste. 100
Palo Alto, CA 94304

*Counsel for Amicus Curiae*
*(additional counsel listed on inside cover)*

December 20, 2023

Mateo de la Torre
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036

*Counsel for Amicus Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>23-299</u>          Caption: <u>In re: Marriott International, Inc.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>The Chamber of Commerce of the United States of America</u>
(name of party/amicus)

_____

 who is _____<u>amicus curiae</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                              ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)  ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

   N/A

6.      Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Ashley C. Parrish                          Date:      12/20/2023

Counsel for: Amicus Curiae

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

INTEREST OF *AMICUS CURIAE*................................................................1

INTRODUCTION..........................................................................................2

ARGUMENT..................................................................................................3

I.    The Court Should Have Enforced the Class-Action Waivers....................................................................................3

II.   Other Errors Warrant Review.................................................7

      A.   The Class Is Not Ascertainable..............................7

      B.   The Court Erroneously Certified "Element-Only" Classes..................................................................10

III.  Improper Class Certification Severely Burden Businesses and the Economy.....................................................................12

CONCLUSION

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ...................................................................3

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .................................................................12

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) .................................................................12

*Burlington N. R.R. v. Woods*,
   480 U.S. 1 (1987) .......................................................................3

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) .................................................................14

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ...................................................10

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ..........................................................8, 9, 12

*Convergys Corp. v. NLRB*,
   866 F.3d 635 (5th Cir. 2017) .....................................................4

*Crews v. TitleMax of Del., Inc.*,
   2023 WL 2652242 (M.D. Pa. Mar. 27, 2023) ........................4

*Cruson v. Jackson Nat'l Life Ins. Co.*,
   954 F.3d 240 (5th Cir. 2020) .....................................................5

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014) ..................................................8, 9

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ...................................................10

*H&T Fair Hills, Ltd. v. All. Pipeline L.P.*,
   76 F.4th 1093 (8th Cir. 2023) ...................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ...................................................................9

*Hammond v. Powell*,
462 F.2d 1053 (4th Cir. 1972) ...................................................8

*Harris v. Med. Transp. Mgmt., Inc.*,
77 F.4th 746 (D.C. Cir. 2023) ..................................................10

*In re Checking Acct. Overdraft Litig.*,
780 F.3d 1031 (11th Cir. 2015) .................................................7

*In re Marriott Int'l, Inc.*,
78 F.4th 677 (4th Cir. 2023) .....................................................9

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
341 F.R.D. 128 (D. Md. 2022) ...................................................9

*In re May*,
595 B.R. 894 (Bankr. E.D. Ark. 2019) ......................................4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 1753784 (N.D. Cal. May 9, 2011) ..............................6

*In re Titanium Dioxide Antitrust Litig.*,
962 F. Supp. 2d 840 (D. Md. 2013) ...........................................6

*Lombardi v. DirecTV, Inc.*,
549 F. App'x 617 (9th Cir. 2013) ..............................................7

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ....................................................12

*Molock v. Whole Foods Mkt. Grp., Inc.*,
952 F.3d 293 (D.C. Cir. 2020) ..................................................5

*Morlan v. Univ. Guar. Life Ins. Co.*,
298 F.3d 609 (7th Cir. 2002) ....................................................5

*Moser v. Benefytt, Inc.*,
8 F.4th 872 (9th Cir. 2021) .......................................................5

*Murphy v. Smith*,
　　138 S. Ct. 784 (2018) ........................................................... 11

*Quicken Loans Inc. v. Alig*,
　　737 F.3d 960 (4th Cir. 2013) ................................................ 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
　　559 U.S. 393 (2010) ............................................................. 4

*Smith v. Bayer Corp.*,
　　564 U.S. 299 (2011) ............................................................. 5

*TransUnion LLC v. Ramirez*,
　　594 U.S. 413 (2021) ........................................................... 11

*U1it4Less, Inc. v. FedEx Corp.*,
　　2015 WL 3916247 (S.D.N.Y. June 25, 2015) ........................ 4

**Statutes & Rules**

28 U.S.C. § 2072 ......................................................................... 3

Fed. R. Civ. P. 23 ................................................................ *passim*

**Other Authorities**

1 Newberg on Class Actions § 3:2 (6th ed.) ............................... 8

Brian T. Fitzpatrick,
　　*An Empirical Study of Class Action Settlements
　　and Their Fee Awards*, 7 J. Empirical Legal Stud. 811 (2010) .......... 13

U.S. Chamber Inst. for Legal Reform,
　　Unfair, Inefficient, Unpredictable: Class Action Flaws and the
　　Road to Reform (2022), http://bit.ly/3NvDDkA .................................... 13

## INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America is the world's largest business federation.  It directly represents approximately 300,000 members and indirectly the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.  An important function of the Chamber is to represent its members' interests in matters before Congress, the Executive branch, and the courts, including by filing amicus briefs in cases raising issues of concern to the nation's business community.

The Chamber's members and their subsidiaries include businesses that are often targeted in class actions.  Because class certification creates immense pressure to settle even unmeritorious claims, the Chamber has a significant interest in ensuring that courts rigorously enforce contractual waivers and faithfully apply Rule 23.

---

[1] No counsel for a party authored this brief in whole or in part and no entity or person, other than *amicus*, its members, or its counsel, made a monetary contribution intended to fund its preparation or submission. All parties consented to the filing of this brief.  Fed. R. App. P. 29(a)(2).

## INTRODUCTION

This case is, in the words of Yogi Berra, "déjà vu all over again." After this Court vacated the earlier class-certification order, the district court issued a second order that is even less defensible than the first. Despite this Court's guidance, on remand it reinstated that prior order and certified separate "issue" classes even though those classes will not resolve liability for a single class member's individual claims.

Data-breach cases are often best resolved through bellwether trials because they are not well-suited for class litigation. Here, however, plaintiffs tried to avoid individual litigation by arguing that customers as a class would have paid less for their hotel rooms had Starwood disclosed its data-security issues. They convinced the district court to grant certification, even though customers waived their rights to participate in a class action, plaintiffs' theory requires extensive individualized fact-finding, and this action will not resolve essential elements of plaintiffs' negligence claims.

This Court should grant review to correct those manifest errors and address important, frequently recurring questions. Absent correction,

the district court's departures from settled class-action procedures create incentives for abuse that will harm businesses and consumers alike.

## ARGUMENT

### I.    The Court Should Have Enforced the Class-Action Waivers.

This case should never have been certified as a class action because all of the class members expressly waived any right to participate in class litigation.  In refusing to enforce those waivers, the court erred for two reasons, each of which has important implications for other putative class actions.

***First***, it erroneously held that stand-alone class-action waivers are unenforceable because they impermissibly require a court to "ignore the provisions of Rule 23 of the Federal Rules of Civil Procedure."  App.20.  Not so.  Nothing in Rule 23 or any other federal rule prevents parties from voluntarily relinquishing their ability to participate in a class action.  Class-action waivers merely limit the procedures for resolving a dispute; they do not prevent parties from vindicating their substantive rights.  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  The district court's contrary reading violates the Rules Enabling Act by giving those rules improper substantive force.  28 U.S.C. § 2072; *Burlington N. R.R. v. Woods*, 480 U.S. 1, 5 (1987).

3

In refusing to enforce stand-alone waivers, the court disregarded numerous cases correctly rejecting its misguided approach. As the Fifth Circuit has held, "there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract." *Convergys Corp. v. NLRB*, 866 F.3d 635, 639 (5th Cir. 2017) (cleaned up). Brushing aside these cases, it relied instead on *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), and its progeny. But *Shady Grove* invalidated a state *statutory* attempt to override Rule 23; it says nothing about private *contractual agreements* to waive class action relief. *Crews v. TitleMax of Del., Inc.*, 2023 WL 2652242, at *4 (M.D. Pa. Mar. 27, 2023) ("The waiver of a right by an individual is not the same thing as the unilateral destruction of a right by statute."). Respecting the parties' "valid and voluntary agreement to waive class actions" is "fully consonant with … *Shady Grove*[.]" *In re May*, 595 B.R. 894, 903 (Bankr. E.D. Ark. 2019); *see U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015).

The court's prohibition on standalone class-action waivers leaves both businesses and consumers with fewer choices for dispute resolution.

4

Businesses face the choice of coupling all class-action waivers with arbitration clauses or not having them at all. Consumers who might prefer litigating their rights individually, rather than in class actions where they have less direct involvement, are left without that option too.

**Second**, the court suggested that Marriott relinquished its right to enforce those waivers based on its precertification conduct. That is also wrong. Pre-certification, "[a]n unnamed member of a proposed but uncertified class is not a party to the litigation." *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 966 (4th Cir. 2013); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (rejecting "novel and surely erroneous argument that a nonnamed class member is a party to the class action litigation *before the class is certified*." (original emphasis) (cleaned up)); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) (pre-certification, class actions "include[] only the claims of the named plaintiff" (cleaned up)); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) (same); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020); *Morlan v. Univ. Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002).

Marriott could not intentionally relinquish its rights vis-à-vis these nonparties. The Eighth Circuit recently recognized as much, finding no

5

waiver where the defendant moved to compel arbitration after class certification because a motion before certification "would have been a motion to bind parties who were not yet a part of the case." *H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, 76 F.4th 1093, 1100 (8th Cir. 2023). Just as defendants cannot enforce arbitration rights against nonparties until the class-certification stage, defendants also cannot relinquish those rights until then. *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 853 (D. Md. 2013); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) (same). This principle applies with greater force to standalone class waivers because, while a defendant could theoretically enforce an arbitration clause against a single plaintiff, it cannot—by definition—enforce a class waiver on an individual basis.

The decision below is incompatible with the "nature of class actions and the logic of class waivers." App.31. In remanding, this Court explained that class certification is "the sharp line of demarcation between an individual action seeking to become a class action and an actual class action." App.31 (cleaned up). The district court effectively erased that line by holding that Marriott relinquished its class-action waiver as to nonparties by litigating against named plaintiffs. That

makes no sense. The named plaintiffs are the only parties to the litigation *before* class certification, the "critical act" that "renders [unnamed class members] subject to the court's power." *In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015).

Finally, finding waiver based on acquiescing to MDL proceedings is wrong and unprecedented. *Cf. Lombardi v. DirecTV, Inc.*, 549 F. App'x 617, 619-20 (9th Cir. 2013). The decision below misread the agreement, which agreed to forgo class actions, not MDL proceedings, and misunderstood the nature of MDLs, in which constituent actions remain separate. If it stands, no defendant would acquiesce to any MDL despite potential efficiencies for parties and courts, lest they inadvertently waive contractual rights.

## II.    Other Errors Warrant Review.

Certification was improper for at least two other reasons: (1) the class members are not readily ascertainable, and (2) the court relied on "element-only" classes.

### A.    The Class Is Not Ascertainable.

In its original order, the court correctly recognized that plaintiffs' overpayment theory raises Article III concerns because many hotel guests are reimbursed in full. Because those uninjured individuals lack

7

standing, it rewrote the class definition to include only individuals "who bore the economic burden" of their hotel stay.  App.5, 27 (cleaned up).  But in attempting to solve one problem, it created another: ascertainability.

Ascertainability is "an 'essential' element of class certification" "encompassed" by Rule 23.  1 Newberg on Class Actions § 3:2 (6th ed.); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).  Unless absent class members are identifiable, courts cannot perform Rule 23's "rigorous analysis."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (cleaned up); *see Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972) (class members must be "readily identifiable").  Without a ready means of ascertaining who belongs in the proposed class, plaintiffs cannot show that common questions "predominate," or that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Taking a certify-now-worry-later approach, the court concluded that the requisite "individualized review" of "individual files" was no obstacle to certification because parties could self-certify that they paid for their hotel stay, affidavits could be cross-checked against databases,

and plaintiffs could rely on individual "receipts and bank and credit card statements." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 145-46 (D. Md. 2022), *vacated and remanded sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *reinstated by* 2023 WL 8247865 (D. Md. Nov. 29, 2023). But defendants are entitled to dispute that evidence. And neither plaintiffs nor the court explained how they could resolve those disputes without "extensive and individualized fact-finding or mini-trials" inappropriate for class litigation. *EQT Prod. Co.*, 764 F.3d at 358 (cleaned up).

The court did note that although identifying class members would be "time consuming," it would "carefully monitor" the case "to ensure continued administrative feasibility." *In re Marriott Int'l, Inc.*, 341 F.R.D. at 145–46. But named plaintiffs must "affirmatively demonstrate" the class can be ascertained *without* cumbersome individualized adjudications. *Comcast*, 569 U.S. at 33, 35 (cleaned up); *see Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23"). In giving plaintiffs a pass,

the court violated Rule 23 and put defendants in the untenable situation of litigating against an unknown and unknowable group.

## B. The Court Erroneously Certified "Element-Only" Classes.

This Court has declined to resolve whether an entire claim must meet Rule 23(b)'s requirements or whether Rule 23(c)(4) allows courts bypass the predominance requirement by selecting individual elements of a single claim for class treatment. App.30, 33; *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 444-45 (4th Cir. 2003). Because the district court erroneously recertified the "element-only" classes on the negligence claims, this Court should clarify that "[t]he proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996); *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 760 (D.C. Cir. 2023) (court had to ensure that issue classes "satisfied one of the three types of authorized class actions under Rule 23(b)").

The district court's contrary approach conflicts with Rule 23, which is a case-management rule, not a revolutionary device permitting

element-by-element litigation. Rule 23(a) lists the four prerequisites of all class actions, Rule 23(b) offers three "types of class actions," and Rule 23(c) provides case-management tools and procedural requirements. *Murphy v. Smith*, 138 S. Ct. 784, 789 (2018) (looking to the "surrounding statutory structure"). Rule 23(c)(4)'s placement alongside Rule 23(c)'s other provisions proves that it, too, is a case-management rule—nothing more.

The court's misguided interpretation raises serious constitutional concerns. As the Supreme Court affirmed, "[e]very class member must have Article III standing … to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Class actions are no exception and permitting litigation that ends before a liability determination invites advisory opinions, which "federal courts do not issue." *Id.* at 424. By allowing class-wide adjudication of individual elements—which neither separately nor together establish standing—the court opened the door to class members who may have suffered no injury at all, much less one traceable to defendants' conduct. *Id.* at 423-24.

That approach also lets cases proceed as class actions even in scenarios the Supreme Court has disapproved. In *Comcast*, for example,

the Court rejected the proposed class because plaintiffs failed to "establish[] that damages are capable of measurement on a classwide basis." 569 U.S. at 34. But an "element-only" approach to Rule 23(c)(4) would have allowed plaintiffs to proceed on the question whether Comcast engaged in "anticompetitive clustering conduct," *id.* at 31, leaving causation and damages for individual determination. Rule 23(c)(4) should not be interpreted to allow plaintiffs to dodge guiding precedent so easily.

## III. Improper Class Certification Severely Burden Businesses and the Economy.

Class certification is not merely "a game-changer," but "often the whole ballgame," given insurmountable settlement pressures on defendants to settle. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 n.2 (3d Cir. 2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "risk of 'in terrorem' settlements"). As a result, "even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975).

Virtually all certified class actions "end in settlement" before trial. Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 812 (2010). And for good reason: Class-action litigation costs crossed the $3 billion threshold in 2021. U.S. Chamber Inst. for Legal Reform, Unfair, Inefficient, Unpredictable: Class Action Flaws and the Road to Reform (2022), http://bit.ly/3NvDDkA. Defending a single class action can run into nine figures and drag on for years. *Id*.

Properly enforcing class waivers and Rule 23's requirements at class certification ensures that parties do not waste time and money litigating claims only for a court to conclude that significant portions of the certified class lack standing or cannot prove essential elements of their claims. Moreover, even assuming some class-action settlements benefit class members and society, they do so only if members can be ascertained. Certifying classes whose members cannot be ascertained only disincentivizes efficient settlements and incentivizes coercive ones.

The court's order certified classes encompassing nearly *20 million individuals* and turned the principle that class actions are the exception, not the rule on its head. *Califano v. Yamasaki*, 442 U.S. 682, 700-01

13

(1979). Neither that result nor the court's reasoning can be squared with Article III, Rule 23, or basic due process. If that decision stands, it will have sweeping consequences for courts and parties alike by discouraging participation in MDLs, allowing end-runs around constitutional principles and controlling caselaw, and adding to the immense pressure to settle improper class actions, ultimately resulting in higher prices for consumers and lower wages for employees.

## CONCLUSION

This Court should review and reverse.

Respectfully submitted,

/s/ Ashley C. Parrish

Jennifer B. Dickey
Jordan L. Von Bokern
U.S. CHAMBER
LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

*Counsel for the Chamber
of Commerce of the
United States of America*

Ashley C. Parrish
Zoe M. Beiner
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
aparrish@kslaw.com

Anne M. Voigts
KING & SPALDING LLP
601 South California Avenue
Ste. 100
Palo Alto, CA 94304

Mateo de la Torre
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036

*Counsel for Amicus Curiae*

December 20, 2023

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure Rule 32(a), I certify that this brief complies with the length limitations set forth in Fed. R. App. Proc. 32(a)(7) because it contains 2,596 words, as counted by Microsoft Word 2013, excluding the items that may be excluded under Federal Rule 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook Font.

Dated: December 20, 2023

/s/ *Ashley C. Parrish*
Ashley C. Parrish
*Counsel for Amicus Curiae*