**Nos. 23-299, 23-302**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA SECURITY BREACH LITIGATION

---

# REPLY OF DEFENDANT MARRIOTT INTERNATIONAL, INC. IN SUPPORT OF PERMISSION TO APPEAL UNDER RULE 23(F)

---

*On Appeal from the Order Granting Class Certification, Entered November 29, 2023, by the United States District Court for the District of Maryland, Civil Action No. 19-md-2879*

---

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
(216) 621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 861-1530

Lindsay C. Harrison
Matthew S. Hellman
Elizabeth B. Deutsch
Mary E. Marshall
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
mhellman@jenner.com

*Counsel for Defendant-Petitioner Marriott International, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 4

I. Plaintiffs' Post Hoc Attempt To Certify Additional Classes Underscores The Need For Review Now. ..... 4

II. The District Court's Class-Waiver Rulings Are Unprecedented And Warrant Review. ..... 7

III. Review Is Needed On Ascertainability And Classwide Damages. ..... 11

IV. Review Is Warranted Because Rule 23(c)(4) Should Not Be Allowed To Eviscerate Rule 23's Requirements. ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## CASES

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......... 12

*Earl v. Boeing Co.*, 21 F.4th 895 (5th Cir. 2021) .......... 6

*EQT Production Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) .......... 6

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) .......... 6

*In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, __ F.Supp.3d __, 2023 WL 6456588 (J.P.M.L. Oct. 4, 2023) .......... 10

## OTHER AUTHORITIES

Melissa J. Whitney, Fed. Jud. Ctr. & Jud. Panel On Multidistrict Litig., *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges* (2019) .......... 11

Respondents' Answer in Opposition to Petition for Interlocutory Appeal, *In re: Marriott International, Inc. Customer Data Security Breach Litigation*, No. 22-184 (4th Cir. June 14, 2022), Dkt. 15 .......... 6

4 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 11:18, Westlaw (6th ed. database updated Nov. 2023) .......... 11

## INTRODUCTION

On remand from this Court's unanimous vacatur, the district court flouted precedent to recertify the largest-ever classes in a lawsuit arising from a data incident. If allowed to stand, the recertification order would have enormous implications for class litigation, multidistrict litigation, and class-action waivers. Plaintiffs' primary response is that this Court's review would be "premature" and "inefficient" because plaintiffs hope to certify amorphous additional classes at some point in the future. But plaintiffs' inaccurate protestations are nothing more than a transparent effort to evade review. This Court's review is ripe and needed now.

As plaintiffs acknowledge, *all* their classes—including both those recertified by the district court *and* any theoretical future classes—contain millions of SPG members who contracted not to pursue class relief. Indeed, every single bellwether plaintiff in this litigation is an SPG member, subject to the identical class-action waiver. That agreement bars any proposed future class for the same reason it bars the massive, recertified classes already on review. Plaintiffs protest that there are "efficiencies" to be gained by deferring this Court's review. But efficiency points in the opposite direction. Plaintiffs are—right now—pursuing onerous and potentially

wasteful discovery based on the recertified classes. Meanwhile, the class-action waiver issue is dispositive of both the recertified classes and any new ones. That issue has been pending for years without a definitive ruling. It is time for an answer.

Though meritless, plaintiffs' attempt to forestall this Court's review is understandable: The district court's recertification order cannot withstand scrutiny. Plaintiffs do not claim surprise or prejudice by Marriott's invocation of the parties' class-action waiver. And they have all but conceded the waiver is not unconscionable.

That leaves plaintiffs to insist that, despite Marriott's express invocations of the class-action waiver, Marriott intentionally relinquished the provision by participating in the MDL process. Against a wall of cases enforcing class waivers in MDLs, plaintiffs still cannot point to a single case to support their waiver-by-MDL theory. Nor do plaintiffs have any support for the notion that waiving a venue or choice-of-law clause (which Marriott did not) has any effect whatever on a class-action waiver; and plaintiffs cannot overcome the SPG Terms' severability and no-waiver provisions. Plaintiffs' alternative contention that the Federal Rules of Civil Procedure ban the parties' class-action waiver is contradicted by the case law and

supplies reason alone for this Court to grant review. These important questions have enormous ramifications for any party involved in complex federal litigation. *See* Amicus Br. of U.S. Chamber of Commerce 12-14.

Plaintiffs fare no better defending the other Rule 23 shortcomings of the recertification order—indeed, they barely defend them at all. The certified classes rest on a novel "overpayment" damages theory, but plaintiffs offer no means of ascertaining class membership because most class members did not foot the bill—they were reimbursed. Despite years to devise a method of ascertaining which members are in and which are out, plaintiffs have none. Plaintiffs offer only that, if the district court certifies other classes in the future, these foundational problems "may vanish." Opp. 13. Plaintiffs do not say how this vanishing act will occur, and they certainly do not say they will seek to decertify the classes resurrected by the district court. To the contrary, they are actively seeking extensive discovery from Marriott premised on the recertified classes.

Plaintiffs also have no answer to the fundamental flaws with their damages model, instead arguing that those flaws cannot be reviewed. That contention ignores the Supreme Court's holding in *Comcast* that these precise issues preclude class certification independent of *Daubert*.

In "respectfully disagree[ing]" with this Court, the district court has recertified classes of unprecedented size and scope. App11, App20. Marriott remains forced to litigate class claims that plaintiffs are contractually barred from bringing. These classes never should have been certified—not once, let alone twice. This Court should review class certification now to avoid more wasteful litigation in defiance of Rule 23 and settled precedent.

## ARGUMENT

### I. Plaintiffs' Post Hoc Attempt To Certify Additional Classes Underscores The Need For Review Now.

After the district court on remand recertified the vacated classes, Marriott informed plaintiffs that it intended to seek 23(f) review. The night before Marriott's petition was due, plaintiffs sought leave to certify even more classes in the district court. After manufacturing additional proceedings below, plaintiffs now say it would be "premature" and inefficient for this Court to grant review.[1] Opp. 13.

[1] The district court granted leave and set a briefing schedule for a supplemental certification motion notwithstanding that this petition was pending. At a hearing on December 27, 2023, Marriott suggested it was premature to consider additional certification given the Rule 23(f) petition, that plaintiffs' new classes would also be subject to the class-action waiver, and that plaintiffs were not seeking to decertify the existing classes. Judge Bailey stated: "that's going to be denied." Dkt. 1162, Tr. 16:5.

What plaintiffs do not say is telling. They do *not* claim they plan to seek certification of classes devoid of SPG members. Nor could they, given that all bellwether plaintiffs are SPG members. Indeed, plaintiffs admit they plan "to certify a larger class, which would subsume the ones at issue in Defendants' petitions." Opp. 2. If a new class (like the recertified classes) consisted entirely of SPG members, the waiver would apply to all class members. If a new class consisted partially of SPG members, it would fail Rule 23's typicality requirements, as Judge Grimm held (and plaintiffs never cross-appealed), in addition to other criteria (commonality, adequacy, and predominance). Dkt. 1014 at 24-25. The effect of the parties' class-action waiver thus remains a key and threshold question dispositive of *all* classes—the recertified classes and any future classes—in this case.

Plaintiffs also do *not* represent that they are seeking to decertify the sprawling, recertified classes. To the contrary, since the recertification order, plaintiffs have pressed Marriott for extensive discovery based on those classes. They have demanded all data about "Class Member Reservations," "Class Member Personal Information," and "each guest who resides in the states in which classes were certified for all non-cancelled reservations made by such guests" during the class period. *See* Email and

attachment from Jason Lichtman to Dante Marinucci (Jan. 2, 2024). Those classes thus remain ripe for review.

If plaintiffs' request to deny 23(f) review pending additional certification proceedings in the district court sounds familiar, it is because they made the same argument the last time this Court granted 23(f) review. Respondents' Answer in Opposition to Petition for Interlocutory Appeal, *In re: Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, No. 22-184 (4th Cir. June 14, 2022), Dkt. 15. Then, as now, plaintiffs claimed the errors underlying certification were not "dispositive" because the district court could still "modify (or even decertify) the classes" or grant certification on different grounds. *Id.* at 1. Then, as now, a decision in Marriott's favor is "likely" to decide whether any class can proceed. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 356-57 (4th Cir. 2014). And then, as now, this Court should grant review, as it has done in similar cases. *See, e.g.*, *id.* at 360; *Earl v. Boeing Co.*, 21 F.4th 895, 898 (5th Cir. 2021); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013).

Plaintiffs' transparent effort to evade review would nullify Marriott's—maybe all defendants'—contractual right to litigate without class actions. It would eviscerate the burden Rule 23 places on plaintiffs to

satisfy its requirements *at* certification. And it would effectively eliminate Rule 23(f) by allowing plaintiffs to indefinitely delay appellate review by endlessly moving in the district court to certify more and more doomed classes. This Court should not countenance such gamesmanship.

## II. The District Court's Class-Waiver Rulings Are Unprecedented And Warrant Review.

Judge Bailey is the first and only judge in the country to hold that, by agreeing to participate in an MDL, a defendant forever relinquishes its contractual right to litigate "[i]ndividually without class action." App12. As every other court has recognized, MDLs are not the same as class actions, and agreeing to an MDL does not disavow a class-action waiver.

In its petition, Marriott cited a litany of cases enforcing class-action waivers in MDLs. *See* Pet. 12. Plaintiffs cite *none* to the contrary. Instead, they contend Marriott's cases are distinguishable because they involved class-action waivers accompanied by arbitration agreements. But if class-action waivers were incompatible with MDLs, those cases would have come out the other way. Plaintiffs do not explain why the presence or absence of an arbitration agreement makes any difference.

Alternatively, plaintiffs suggest that, in Marriott's cited cases, the defendants "moved to compel arbitration at the earliest possible time." Opp.

20. But plaintiffs do not explain when exactly Marriott should have tried to enforce its class-action waiver (and they do not and cannot claim that they were unaware of Marriott's repeated assertion of that defense). This Court stated in its prior decision that Marriott appeared to have followed the "consensus practice" by asserting its class waiver at class certification. App31. Plaintiffs identify no earlier stage because, under the district court's extreme ruling, there is literally nothing Marriott could have done: By merely agreeing to an MDL, Marriott had already repudiated the class wavier. Again, no court until now has ever so held.

Plaintiffs alternatively contend that even if participating in an MDL does not relinquish a class-action waiver, Marriott indirectly gave it up by supposedly waiving the SPG Terms' venue and choice-of-law provisions. That argument, too, lacks case or record support. It is wrong on multiple levels.

Plaintiffs' venue argument is just a reprise of their misguided waiver-by-MDL argument. Every MDL needs to take place in *some* jurisdiction. Where, as here, and in many complex cases, there are multiple potentially relevant contracts with competing venue provisions, no single MDL location will satisfy them all. That is why agreeing to an MDL does not waive venue;

venue provisions remain operative to transfer actions back for merits resolution once the MDL has concluded. *See* Pet. 16 & n.3. Adhering to that blackletter rule is particularly important in this case, as the parties agreed to the MDL long before plaintiffs identified which contracts—of the dozens they put at issue[2]—they intended to rely on for class certification.[3]

As for choice of law, both Marriott and plaintiffs expressly *reserved* all choice-of-law arguments as part of their agreement for terms governing a bellwether process—which Judge Grimm encouraged them to reach. Dkt. 368; *see* Dkt. 451 at 2 n.1. Plaintiffs' contention that Marriott "intentionally relinquished" its class-action waiver by reserving choice-of-law issues is risible. Nor do plaintiffs meaningfully respond to the SPG Terms' express no-waiver and severability provisions, *see* Dkt. 1022-34 at 21; plaintiffs simply suggest that because the class-action waiver and choice-of-law and venue provisions appear in one paragraph, waiving one waives all, Opp. 16-

[2] Plaintiffs do not even attempt to explain how Marriott could have effectively invoked the SPG Terms' class-action waiver earlier when plaintiffs had previously refused to clarify which contract(s) they were relying upon to define their classes. *See* Pet. 5-6, 13-14.

[3] Plaintiffs suggest that the district court made factual "findings" in support of its relinquishment argument. Opp. 15-16. Not so. Judge Bailey was not present during the prior stages of this case, and his determination rests on (erroneous) legal conclusions based on the case's procedural history. App10-11.

17. That is not how severability works. *See* Pet. 15. Once again, plaintiffs have no precedent on their side.

Finally, plaintiffs have no defense for the district court's holding that the Federal Rules of Civil Procedure bar the parties' class-action waiver. Faced with overwhelming precedent rejecting precisely this argument, *see* Pet. 18, plaintiffs insist that *this* contract is different. According to plaintiffs, the verb "handled"—in the SPG Terms' statement that disputes "will be handled individually without any class action"—uniquely and illegally ties the hands of federal courts. Dkt. 1022-34 at 21. Not so. The SPG Terms are a contract between the parties that sets out their mutual duties and rights vis-à-vis each other, committing they would not handle their disputes by class mechanism. That does not bind the federal courts any more than any other contract in which the parties agree to waive class relief by other locutions.[4]

---

[4] Plaintiffs' lone cited support—*In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, __ F.Supp.3d __, 2023 WL 6456588, at *2 (J.P.M.L. Oct. 4, 2023)—is entirely inapposite. That case dealt with centralization to an MDL, not class-action waivers. *Id.* at *1. The Panel correctly held that parties cannot contract around a statute that authorizes the Panel to centralize civil cases on its own initiative. *See id.* (citing 28 U.S.C. § 1407(a), which provides that "transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its

What's more, contra plaintiffs, bellwether proceedings, like MDLs, are consistent with the parties' contract. Bellwethers test claims and defenses common to multiple individual actions; they are not representative, non-individual actions because they do not litigate other parties' claims or bind other parties (unlike class actions). *See* Melissa J. Whitney, Fed. Jud. Ctr. & Jud. Panel On Multidistrict Litig., *Bellwether Trials in MDL Proceedings* 5-6 (2019); 4 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 11:18, Westlaw (6th ed. updated Nov. 2023). The Court should grant the petition to reverse the unprecedented order below.

## III. Review Is Needed On Ascertainability And Classwide Damages.

Plaintiffs barely muster a defense of their own classwide damages model and do not even attempt to rescue the ascertainability of the recertified classes.

As to damages, plaintiffs simply ignore *Comcast* and its progeny, which establish an independent duty to "affirmatively demonstrate" at class

---

determination that transfers … will promote the just and efficient conduct of such actions"). Rule 23, by contrast, does not provide that courts "shall" certify classes regardless of whether the parties move for them—indeed, numerous courts have held that classes fail Rule 23's requirements where the class representative and members waived the right to pursue class relief. *See supra* at 7. There is no analog in the JPML context.

certification a model capable of measuring damages on a classwide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 35 (2013); *see* Pet. 23-26. As the Supreme Court made clear, that burden, which arises under Federal Rule of Civil Procedure 23, is distinct from *Daubert*'s requirements, under Rule 702 of the Federal Rules of Evidence, for expert evidence to be admissible in the first instance. *See* Pet. 32 n.4. Plaintiffs suggest that if later classes are certified, they may not need this damages theory—a redux of their wait-till-next-year defense to 23(f) review, *see supra* at 5-6. But that approach threatens to eviscerate both *Comcast and* Rule 23. As it did last time, this Court should hold plaintiffs to their certification burden and grant review.

As to ascertainability, plaintiffs effectively concede the recertification order's fatal problems, hoping that they "may vanish" but never explaining how. *See supra* at 3. This Court's intervention is needed.

## IV. Review Is Warranted Because Rule 23(c)(4) Should Not Be Allowed To Eviscerate Rule 23's Requirements.

Marriott joins Accenture's arguments that review is warranted to address whether Rule 23(c)(4) permits courts to revive classes that fail predominance by carving out individual elements and creating classes comprising individuals who largely lack standing.

## CONCLUSION

The petition should be granted.

Dated: January 16, 2024

Respectfully submitted,

/s/ *Matthew S. Hellman*
Lindsay C. Harrison
Matthew S. Hellman
Elizabeth B. Deutsch
Mary E. Marshall
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
mhellman@jenner.com

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
(216) 621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 861-1530

*Counsel for Defendant-Petitioner Marriott International, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), Petitioners, by and through their counsel of record, hereby certify that this reply complies with the type-volume limitations of Fed. Rule App. P. 5(c)(1) because this reply contains 2,566 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

I further certify that this reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this reply has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century Expanded LT Standard 14-point font.

Dated: January 16, 2024 *<u>/s/ Matthew S. Hellman</u>*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I electronically filed the foregoing reply with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. I certify that all parties to this case are registered CM/ECF users and that service to those parties will be accomplished by the CM/ECF system.

Dated: January 16, 2024

*/s/ Matthew S. Hellman*